# Central Railroad & Banking Company v. Lampley.

*Trover against Railroad Company, for Money transmitted by Registered Letter, and Lost or Stolen.*

| 76 | 357 |
| 97 | 713 |
| 76 | 357 |
| 102 | 412 |
| 76 | 357 |
| 128 | 624 |

1. *Common carrier; liability depends on what.*—To make a carrier subject to the stringent liability imposed by the common law on common carriers, there must be privity of contract, express or implied, between him and the person who employs him, and a right on his part to compensation for his services.

2. *Same; liability to sender of letter by mail.*—There is no privity of contract between the sender of a letter by mail and the contractor with the government for carrying the mails, nor has the latter any right to compensation from the former; consequently, he is not liable as a common carrier to the sender of the letter, although he may be at the same time engaged in the business of a common carrier.

3. *Agents of public officers; liability of principal for their acts or defaults.*—Public officers are exempt from liability for the acts and defaults of persons employed under them to assist in the performance of their official duties, both on considerations of public policy, and on the ground that such persons are acting, not as the private agents of their superiors, but as public agents; and where the subordinates are acting, not under an official employment, but as the agents and servants of the officers individually in the discharge of their duties, the exemption from liability ceases, and the doctrine of *respondeat superior* applies.

4. *Contractor and carrier of public mails; liability for acts and defaults of agents and servants.*—The contractor for carrying the mails, and not the carrrier employed by him, is the public agent, if such contract constitutes an agency; and as to his liability for the acts and defaults of subordinates employed in the transmission, the court "approves and adopts the legal propositions asserted and maintained in *Sawyers v. Corse*, 17 Gratt. (Va.) 230."

5. *Railroad company carrying mails; liability to sender of lost letter, and form of action against.*—A railroad being by law an established post-road, and the mails being carried along its route by the directions of the post-office department of the government, the liability of the railroad company for the loss of mail matter is not that of a common carrier, but of a bailee for hire; and while it would be liable to the sender of a registered letter, if stolen or lost through the negligence or want of care of its agents or servants, the burden of proof is on the plaintiff to show that the theft or loss was caused by such negligence, and trover is not the proper form of action to enforce the liability.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. H. D. CLAYTON,

[Central Railroad & Banking Company v. Lampley.]

This action was brought by James A. Lampley, against the Central Railroad and Banking Company of Georgia, a foreign corporation, to recover damages for the alleged conversion, on or about the 20th January, 1881, of $255 in money, which the plaintiff had sent by mail, inclosed in a registered letter, at Louisville, Alabama, directed to H. Lampley at Eufaula, and which was never received by said H. Lampley. The complaint contained only a single count in trover for the conversion of the money, not stating any other facts. The defendant pleaded not guilty, and two special pleas, as follows : 2. " Defendant is a railroad corporation, and was on said 20th January, 1881, and before and after, operating the railroad from Clayton to Eufaula ; and under and by the direction of the United States Government, or the post-office department thereof, it was defendant's duty to carry the mail pouches and sacks containing the mail matter, passing between Clayton and Eufaula and intermediate offices; and on said 20th January, 1881, defendant carried the mail sacks and pouches from Clayton to Eufaula, which were delivered to it for carriage ; and defendant did not open, abstract, or take from them any money of the plaintiff or any other person ; and defendant further avers that it has never had the plaintiff's money alleged to have been converted, and has it not now." 3. " Defendant says, that it did not convert to its own use the money alleged in the complaint to have been converted by it, nor deliver it to any other person ; that when it received the mail pouches and sacks on said 20th January, 1881, for transportation from Clayton to Eufaula, it did not know their contents, said pouches and sacks being closed, strapped and locked by the post-office authorities of the United States ; that it delivered them, on the same day it received them at Clayton, to the post-office in Eufaula, in the same condition apparently as when received ; that if any of said pouches or sacks, on passing out of the hands of this defendant, did not have the same contents that they had on coming into its hands, then said pouches or sacks were unlawfully purloined from, and without the knowledge or consent of this defendant ; and defendant says that it was in the custody or charge of said pouches and sacks, at the instance of, and under the direction and pay of the United States Government, and has never had said $255 in its possession, nor any part thereof, except it might have been in said pouches or sacks." The judgment-entry recites, that issue was joined on the plea of not guilty " and the other pleas shown by the record ;" and under the rulings of the court, the plaintiff had a judgment on verdict for $303.72.

On the trial, as the bill of exceptions shows, *the plaintiff*, who was the postmaster at Louisville at the time the letter was mailed and lost, testified in his own behalf that, on the 19th

January, 1881, he inclosed $255 in a registered letter addressed to H. Lampley at Eufaula, which, according to the rules and practice of the post-office department, was inclosed in an envelope addressed to the post-master at Eufaula, with a blank receipt for the same, wh'ch was required to be signed by the next post-master on the route, at Clayton, who in turn forwarded the registered letter, with another blank receipt, to the post-master at Eufaula, who returned it with the indorsement that the registered letter was "not received." *II. Williams*, the post-master at Clayton, who was examined as witness for the plaintiff, testified that the registered letter came into his hands, with the rest of the mail matter in the pouches, and was inclosed by him in the next mail for Eufaula; and he further testified as follows: "The pouch containing this money package was strapped and locked by me, and delivered to one Dan. Caruthers, who was in the employment of the defendant; and I saw him carry the pouch to the defendant's depot in Clayton, where he was met by another employee of the defendant, who attends at defendant's said depot, and they passed around the building to the train of cars standing on the other side. Caruthers did not open the pouch while in my sight. At that time, the Clayton mail-pouches were delivered to me from the depot by some person in the employment of the defendant, and by me to some person in the defendant's employment. The post-office department furnishes one postal key only to an office, and with it all pouches are unlocked. The pouch this package was placed in was locked by me before it was sent out of office, and left my hands in good order. The postal locks are not complicated: a good mechanic could easily make a key that would unlock one. At the date of this transaction, Henry Caruthers was an employee of the defendant, and was running as a train hand between Clayton and Eufaula. *He is now in the penitentiary, serving out a sentence for stealing an iron safe from the defendant out of its cars.* In January, 1881, there were no route agents, or other officials, running between Eufaula and Clayton. The defendant carried the mails. On one occasion, I sent a registered letter from Clayton to Eufaula, and the return mail brought it back to me. I suppose it became fastened in the bottom of the pouch, and did not fall when the mail was poured out." *Wes. Jones*, a porter in the employment of the Southern Express Company at Eufaula, was also examined as a witness for the plaintiff, and thus testified: "I carry the mail-pouches from the post-office in Eufaula to the Clayton trains, and from such trains to the post-office; and I was so carrying such pouches on the 20th January, 1881. I met the Clayton train, on the morning of that day, on its arrival from Clayton, and received the mail-pouches from Henry Ca-

ruthers, who usually delivered them to me from the cars. On that day, the pouches came into my hands in apparent good order, and were delivered by me to the post-office in Eufaula in the same condition in which I received them. I went direct from the depot to the post-office, and carried the mail through a business street in the day-time." *E. L. Brown*, a clerk in the post-office at Eufaula, who had charge of the registered letters and money orders, testified, as a witness for the plaintiff, to the rules and regulations for the transmission of registered letters, as plaintiff had stated them in his testimony : and he further testified thus : " The post-master at Eufaula has absolute control of his office, and can at pleasure handle any mail matter, or do anything with the mails or money in the office ; and no clerk or employee in his office can prevent him from handling the mails. W. H. Locke was the post-master at Eufaula in 1881, and lived on his plantation near the city, and was not always present in the post-office. C. A. Locke, his son, was at that time the clerk who, I think, generally attended to receiving and opening the Clayton mail." The plaintiff also read in evidence the deposition of *C. A. Locke*, in which he testified : " I was employed in the post-office at Eufaula in January, 1881, and had charge of the money orders and registered letters. No registered letter came to said office from Jas. A. Lampley, for any person, on or about January 19th, 1881, that I knew of. Wes. Jones was, I think, the Clayton mail-carrier in January, 1881. On the day the registered letter from Louisville, *billed* to the post-office at Eufaula, was due, I opened the mail-bag, with the assistance of my brother, Willie Locke. On that day, the Clayton mail-pouch was received locked, and all right."

This was all the evidence offered by the plaintiff. The defendant then introduced *F. L. Stewart* as a witness, who was the conductor on the train between Clayton and Eufaula in January, 1881, and who thus testified : " My train transported the mail-pouches between Clayton and Eufaula. The pouches were brought from the post-office in each of those towns to my train, and were thrown into the baggage-car ; and I placed them, or had them placed, generally, upon the baggage. I did not stay all the while with the mails, but usually remained in the car when not engaged in my duties as conductor, and frequently sat in the passenger-car talking with friends. Henry Caruthers was an employee on my train, and looked after the baggage ; and he had free access to the baggage-car, where the mail-pouches were carried. On the 20th January, 1881, the mail-pouch was not tampered with, so far as I know. There were no route agents on my train at that time, nor other postal officials, nor any postal car, and none were running between Eufaula and Clayton. I was never sworn as a postal official.

[Central Railroad & Banking Company v. Lampley.]

After the loss of this letter, the United States authorities requested me to be sworn as a postal official, but I refused, and never was sworn. No person on my train had a key to the postal lock on the mail-pouch, so far as I know. The pouch remained in the baggage-car, from Clayton to Eufaula. No person had a right to handle it. I did not take any package, or other thing, out of the mail-pouch, on said 20th January, 1881, and never had any of the plaintiff's money in my hands, nor paid any money of his over to the defendant." *W. F. Shellman*, the superintendent of the defendant's road from Eufaula to Clayton, was examined as a witness for the defendant, and thus testified : "The defendant was carrying the mails between Clayton and Eufaula, on the 20th January, 1881, under instructions or directions from the United States Government. The post-office department at Washington notified the defendant to carry the mail between those places, on the railroad, and that a certain sum of money would be allowed for the service ; and the defendant was carrying the mails under this order, on said 20th January, 1881, and received pay therefor as allowed by the Government. The Government furnished no agent to take and keep charge of the mails on said 20th January, 1881, nor for some time before or after, and there was no officer or agent of the Government in charge thereof ; nor was any employee of the defendant sworn to carry or safely keep said mails." It was admitted by plaintiff, "that the treasurer of the defendant corporation is the person authorized to receive and receipt for all moneys paid to said corporation ; and that the money sued for in this action never went into his hands, nor was ever received by him, or by any one else, as money belonging to said corporation."

"This was all the testimony offered by the defendant. At the close of the examination of the witnesses, the defendant moved the court to exclude from the jury, as evidence, that part of the testimony of the witness *Williams* relating to the whereabouts of Henry Caruthers, and accounting for his presence in the penitentiary, because it was illegal, irrelevant, and immaterial ; which objection and motion the court overruled, and the defendant excepted. While the witness *Brown* was on the stand, the defendant offered to prove by him that, subsequent to said 20th January, 1881, said W. H. Locke, then the postmaster at Eufaula, was discovered to have embezzled funds coming into his hands as postmaster, during a period covering that date ; which evidence, on objection by plaintiff, the court excluded, and the defendant excepted."

The court charged the jury, " among other things, as follows : " (1.) "To entitle the plaintiff to recover, the jury must be satisfied, from the evidence, that the money sued for was de-

[Central Railroad & Banking Company v. Lampley.]

livered to the defendant's agent as a common carrier, and that it has not been delivered according to the undertaking, either before or after demand made." (2.) "The bringing of the suit is a demand, and it is not necessary that the plaintiff should prove any other." (3.) "It is no answer to this complaint, that the money was lost through their want of proper care, nor that they carried the mail as the agent, or by the order of, or by contract with the Government." The defendant duly excepted to each of these charges, and also to the following charge, which was given by the court on the request of the plaintiff: "If the jury believe, from the evidence, that the plaintiff delivered to the defendant the money now sued for, in the mail-bag at Clayton, to be delivered by it at Eufaula, and that defendant failed to deliver said money at Eufaula, before or after demand made; then, in law, such failure to deliver the money amounts to a conversion of it." The defendant requested the court, in writing, to instruct the jury, that, "if they believed the evidence, they must find a verdict for the defendant;" and to the refusal of this charge the defendant duly excepted.

The rulings of the court on the evidence, the several charges given, and the refusal of the charge asked, are now assigned as error.

ROQUEMORE & SHORTER, for appellant.—(1.) The rulings of the court in the admission and rejection of evidence were erroneous. The conviction of Dan Caruthers, an employee of the defendant, for another offense, had no legal connection with the question of the defendant's liability for the alleged conversion in this case; and yet it was calculated to prejudice the jury, by inducing the belief that he might have purloined the plaintiff's money. If such evidence was admissible against the defendant, because one of its servants, who had proved untrustworthy, had access to the mails; the same rule should be applied in favor of the defendant, and it should be allowed to show that the postmaster, an officer of the Government, who had uncontrolled access to the mail, and for whose acts the defendant is not responsible, was a defaulter at that very time. (2.) The defendant, being the public agent of the Government, is not responsible for the malfeasance of its servants, or their embezzlement of mail-matter coming into its possession; in such cases, the rule of *respondent superior* does not apply. Story on Agency, §§ 319–21, 313; *Dunlap v. Monroe*, 7 Cranch, 242; 2 Kent's Com. 610; 3 Wils. 443; 5 Burr. 2709; Cowp. 754–65; 4 Mass. 378; *Wiggins v. Hathaway*, 6 Barb. 632; *Lane v. Cotton*, 1 Ld. Raym. 646; *Connell v. Vorhees*, 13 Ohio, 542. (3.) The United States Government is the

carrier of the mails, and the contractors for carrying them are
its agents; but they are neither common carriers for the public,
nor private carriers for individuals; and the contractor is not
liable to the loser of money sent by mail, even though it was
stolen from the mail by a person employed by him in its car-
riage.—*Connell v. Voorhees*, 13 Ohio, 542; *Richmond v.
Long's Adm'r*, 17 Gratt. 378; *Dunlap v. Monroe*, 7 Cranch,
242: *Hutchins v. Brackett*, 2 Foster, 252; *Murray v. Caruth-
ers*, 1 Metc. Ky. 71; *Whitfield v. Le Dispenser*, 1 Ld. Raym.
646; Story on Agency, §§ 309, 319–21; Story on Bailments, §
463; 1 Amer. Lead. Cases, 785; *Schroyer v. Lynch*, 8 Watts,
453; *Keenan v. Southworth*, 110 Mass. 474; Whart. Neg.
§ 292; *McCoy v. McKowen*, 26 Miss. 487; *Railroad Co. v.
Harrison*, 48 Miss. 112; *Foster v. Essex Bank*, 17 Mass. 479;
*Foster v. Metts & Co.*, 55 Miss. 77; 6 Barb. 632. (4.) If the
defendant is liable at all, it is not in this form of action, the
*gist* of which is a conversion.—*Harris v. Hillman*, 26 Ala.
3~0; *Conner & Johnson v. Allen & Reynolds*, 33 Ala. 515; 2
Greenl. Ev. § 642; *Thweatt v. Stamps*, 67 Ala. 96; 13 Barb. 641.
(5.) That trover can not be maintained, even against a carrier,
for goods lost by inadvertence, mistake, or negligence, see *Bul-
lard v. Young*, 3 Stew. 46; *Hawkins v. Hoffman*, 6 Hill, 586;
2 Salk. 655; 5 Burr. 2825; 1 Taunt. 391; 2 Saund. 47, f;
6 East, 538; 8 Mees. & W. 540; *Heald v. Carey*, 11 C. B.
977; *Robinson v. Austin*, 2 Gray, 564; *Loring v. Mulcahey*,
3 Allen, 575; *Parker v. Lombard*, 100 Mass. 405; *Spooner v.
Holmes*, 102 Mass. 503; *Tolano v. Steam Nav. Co.*, 5 Rob. 318;
*McMorris v. Simpson*, 21 Wend. 610; *Packard v. Getman*,
4 Wend. 613; *Magnin v. Dinsmore*, 70 N. Y. 410: *Scoville
v. Griffeth*, 2 Kern. 515.

McKLEROY & COMER, *contra*.—(1.) Although the Govern-
ment may not be liable, and the contractor for carrying the
mails may not be liable, for money transmitted by mail and
lost; yet the principle can not be extended to a common car-
rier, because he makes a special contract with the Government
for the transmission of the mails. Whatever additional duty
or liability to the Government is thereby assumed or incurred,
his duty and liability as a common carrier remain the same, to
those who are injured by the negligence or torts of his ser-
vants; and that liability extends to every loss which is not
caused by the act of God or the public enemy.—*Jones v.
Pitcher*, 3 Stew. & P. 135; 2 Kent's Com. 598; *Boone & Co.
v. Belfast*, 40 Ala. 184; Story on Bailments, § 489; *Cox,
Brainard & Co. v. Peterson*, 30 Ala. 608. If the proof showed
a conversion in fact of the plaintiff's money, by any servant or
agent of the defendant, while in possession under its contract

with the Government, there cou'd be no doubt of the defendant's liability ; and when the liability arises by implication of the law, from the facts stated, the same rule must apply. *Sawyer v. Corse*, 17 Gratt. 230 ; *Greenfield Bank v. Leavitt*, 17 Pick. 1 ; *Shakers v. Underwood*, 9 Bush, Ky. 609 ; *Jones v. Sims & Scott*, 9 Porter, 236. (2.) The failure to deliver the money was a conversion, and the bringing of the suit was a sufficient demand.—*Bullard v. Young*, 3 Stew. 46 ; *Railroad Co. v. Kidd*, 35 Ala. 209 ; 1 Chitty's Pl. 155 ; *Overstreet v. Nunn's Ex'rs*, 36 Ala. 649 ; *Fryer v. McRae*, 8 Porter, 187 ; *Wolcott v. Keith*, 22 N. H. 196 ; *Dudley v. Sawyer*, 41 N. H. 326 ; *Fisk v. Ewing*, 46 N. H. 173 ; *Glaze v. McMillion*, 7 Porter, 279 ; *Lockwood v. Bull*, 1 Cowen, 322 ; *Packard v. Getman*, 6 Cowen, 857 ; *Teal v. Felton*, 3 Barb. 512. (3.) It was material for the plaintiff to show the whereabouts of Caruthers, as an excuse for not introducing him as a witness. But the default of Locke as postmaster, when it was shown that he had nothing to do with the mail which carried plaintiff's letter, was entirely irrelevant to any of the issues in the case.

CLOPTON, J.—A common carrier, as generally defined, is one whose usual or regular business is the transportation, for reward, of goods from one place to another, for such persons as choose to employ him. To originate the exceptional liability of the common law, although founded on reasons of public policy, and to create the relation, there must exist privity of contract, express or implied, and a title to compensation for the services. Public policy operates on those only who transport for reward or hire. Where there is no right to remuneration, the party who carries incurs no liability other than that of a gratuitous bailee.—*Cit. Bank v. Nan. St. Co.*, 2 Story, 16 ; *Knox v. Rives, Battle & Co.*, 14 Ala 249.

Between a contractor for carrying the public mails, and the sender of letters, there is no privity of contract, and the contractor has no right to, and receives no remuneration from the sender. The Government undertakes the transmission of the mails, and receives pay therefor by the postage charged. The contractor's contract is with the Government, and by it his compensation is paid. He owes a duty, not to the sender of letters as an individual, but to the integral public, springing from his agreement to carry the mails. The public mail is not the proper subject of a common carrier's charge, and the extraordinary responsibility attached by law to such employment does not attach to a mail-contractor. He does not become an insurer of the safe transportation of mail matter ; the extent of his liability is the same as that of a bailee for hire.

[Central Railroad & Banking Company v. Lampley.]

The railroad company was not transformed into a common carrier as to the mails, because, being engaged in the regular business of transporting goods for the public, it was, at the same time, carrying the mails by direction and employment of the proper department of the Government. The occupation of the company was of a dual character. It was acting in two capacities, created and regulated by separate and distinct contracts and employments. The liability of the defendant can not, therefore, be determined by the rules governing the responsibility of a common carrier.

It is well settled, that public officers are exempt from liability for the acts and defaults of those employed under them to assist in the performance of their official duties. Notwithstanding the vigorous dissenting opinion of Lord Holt, since the decision in *Lane v. Cotton*, 1 Ld. Ray. 646, it has been generally held, that neither the postmaster-general, nor an assistant or local postmaster, is responsible for the negligence or willful wrongs of the persons employed in assisting him in the discharge of his public duties and functions. The rule rests on considerations of public policy, and on the ground that such persons are acting in the capacity of public agents, and not as the private agents of the officers. It is conceded that a public officer is liable for his own misconduct or negligence, and for the misconduct or negligence of his subordinates, where he is invested with their selection or appointment, and from carelessness or unfaithfulness appoints incompetent or untrustworthy persons.— *Wiggins v. Hathaway*, 6 Barb. 632. As founded on like reasons and considerations, the exemption has, by some of the cases, been extended to mail-contractors.—*Connell v. Voorhees*, 13 Ohio, 523; *Hutchins v. Brackett*, 22 N. H. 252; *Foster v. Metts*, 55 Miss. 77.

The idea of agency imports a delegation of power by one authorized to confer it. The relation exists between the appointee and the person who nominates or appoints, either directly or by re-delegation, or ratification—a person to whom the agent is responsible for the manner in which he executes the authority. The responsibility of a public officer, for the acts and defaults of those employed by or under him, depends upon the question, whether such persons are acting in the public service, as agents of the Government, by direct appointment, or by authorized sub-appointment, or whether they are his private agents and servants, employed by virtue of his individual and independent authority, and paid by, and responsible to him,—whom he can employ, retain, and dismiss at will; "in other words, whether the situation of an inferior is a public office, or private service."—1 Am. Lead. Cas. 785. If the subordinates are the agents and servants of the officers, not

by an official employment, but to assist him as an individual in the discharge of his official service, the reason ceases for the non-application of the doctrine of *respondeat superior*, and for exemption from liability for their misconduct or negligence.

The contractor, being the person who contracts with, and is paid by the Government, and who gives a guaranty for the faithful discharge of the service, is the public agent, if such contract constitutes an agency.    He is the one directly responsible to, and with whom the Government deals.    He employs his own carriers, who are paid by him, and who are not known to the Government, other than as his employees.    As to civil responsibility, the contractor stands between the carrier and the Government; although, for the purpose of public security, an oath may be required of the carrier, and penalties imposed for violations of the laws of the postal service.    In a sense, the carrier may be said to do work for the Government, not as an agent, but as one employed by the contractor, in his own name, for his individual benefit, and on his personal responsibility, as necessary help to do the service which he has contracted to do. Laborers, employed by a contractor for the construction of naval vessels, or for the erection of public buildings, may, in the same sense, be said to do work for the Government, but they are not public laborers.    We approve and adopt the legal propositions, as to the liability of a contractor, maintained and asserted in *Sawyers v. Corse*, 17 Grat. 230.

The mail-pouches were carried on the baggage in the baggage-car, to which persons employed on the train had access, and neither the conductor, nor any one else, had been sworn as a mail-carrier.    It was held in *Bishop v. Williamson*, 2 Fairf. 295, that the postmaster was liable for the acts of one whom he permitted, without having been sworn, to have the care and custody of the mail in his office.    Such person was said to be acting as the agent or servant of the postmaster.

The regular and usual business of the defendant was a carrier of passengers and goods.    Its railroad was, by law, an established post-road ; and by direction of the post-office department, was carrying the mails between Eufaula and Clayton. The agents and servants on the train were not employed for the special business of transporting the mails.    They were employed in the general business of transportation, and, under such employment, were used in the incidental service of carrying the mail matter.    Being thus generally engaged, and rendering such general service, as the private agents and servants of the defendant, the incidental service in carrying the mails does not impart to them the character of public agents and servants.    If the money of the plaintiff, inclosed in a registered letter, was lost by the negligence or want of care of the agents

or servants of the defendant, the defendant would be liable in a proper form of action.

We have said the defendant is not a common carrier in the transportation of mails, and does not incur the extraordinary liability imposed by the common law on carriers; that the liability of the defendant is that of a bailee for hire. A bailee for hire is not responsible for the willful wrongs of his agent, unless done in the course of his employment. If the money of the plaintiff was stolen, and the negligence of the defendant did not cause the theft, the defendant is not liable. The law "raises no presumption either way, from the mere fact of theft. It neither imputes the theft to the neglect of the party, nor, on the other hand, exempts him from responsibility from that fact alone. But it decides upon all the circumstances of the case, and thence arrives at the conclusion, that there has been, or there has not been, a due degree of care used."—Story on Bail. § 39; *Foster v. Essex Bank*, 17 Mass. 479; *Moore v. May. & Ald. of Mobile*, 1 Stew. 284. The burden is on the plaintiff, to show that the theft was occasioned by the negligence of the defendant.

Whether the extent of the liability of the defendant be the exceptional liability of a common carrier, or the analogous liability of a bailee for hire, it must be enforced on proper pleadings, and in a proper form of action. "A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title inconsistent with his own."—2 Green. on Ev. § 642; *Conner & Johnson, v. Allen & Reynolds*, 33 Ala. 515. Where the circumstances do not amount to an actual conversion, a demand and refusal must be shown. A refusal to deliver on demand is evidence of a conversion, and not a conversion itself; and the demand and refusal must occur prior to the commencement of the suit, as the plaintiff's cause of action must be complete at that time.—2 Green. on Ev. § 644; *Parker v. Middlebrooks*, 24 Conn. 207. Trover will lie, only, where the defendant is guilty of a conversion, which implies a wrongful disposition, appropriation, wasting, destruction, or withholding of the property. The essential element of a conversion is *malfeasance*. The action will lie against a common carrier, for a misdelivery, or an appropriation of the property to his own use, or for any act of dominion or ownership, antagonistic to, and inconsistent with the plaintiff's claim or right. But trover will not lie against a carrier, for goods lost by accident or stolen, or for non-delivery, unless there be a refusal to deliver while

having possession; nor for any act or omission, which amounts to negligence merely, and not to an actual wrong.—*Packard v. Getman*, 4 Wend. 613; *Maynin v. Dinsmore*, 70 N. Y. 410. So, also, a bailee is not liable for a conversion, who deals negligently with goods intrusted to him.—*Heald v. Carey*, 11 C. B. 977. On like principles, trover will not lie against a mail-contractor, for money lost by negligence, or stolen, unless the theft was authorized by him.

We do not understand, as is insisted on, that the evidence shows, or tends to show, that the defendant is guilty of any wrongful disposition, or appropriation, or withholding of the letter containing the money, other than a failure to deliver on the commencement of the suit. It appears that the letter was stolen by some one; but whether by a third person, or a servant of the defendant, the defendant is not liable as for a conversion. In *Conner & Johnson v. Allen & Reynolds*, 33 Ala., *supra*, it was said: "Trover is one of the actions, the boundaries of which are distinctly marked, and carefully preserved by the Code. A conversion is now, as it has ever been, the *gist* of that action, and without proof of it the plaintiff can not recover, whatever else he may prove, or whatever may be his right of recovery in another form of action." On the facts shown by the record, the defendant is not liable as for a conversion of the money.

Reversed and remanded.