(78 South. 817)

STATE v. KOLB et al. (3 Div. 344.)

(Supreme Court of Alabama. Feb. 14, 1918. Rehearing Denied April 25, 1918.)

1. OFFICERS ⬤118—LIABILITY FOR ACTS OF ASSISTANTS—BONDSMAN.

In the absence of statute, neither an officer nor his bondsman is liable for the defaults and misfeasances of his clerks or assistants appointed by him and under his control, in the absence of negligence in such appointment, or in failure to properly supervise their acts.

2. AGRICULTURE ⬤1—STATUTES—LIABILITY FOR ACTS OF ASSISTANTS.

Acts 1909, p. 272, § 9, relating to the sale of feedstuffs, and providing that the commissioner of agriculture and industries and his bondsmen shall be liable for certain defaults of his clerks, was repealed by Acts 1911, p. 104, covering the same subject-matter, and intended to be complete in itself, but containing no similar provision.

Appeal from Circuit Court, Montgomery County; Gaston Gunter, Judge.

Proceedings by the State of Alabama against R. F. Kolb and others. From a judgment for defendants, plaintiff appeals. Affirmed.

F. Loyd Tate, Atty. Gen., and Emmett S. Thigpen, Asst. Atty. Gen., for the State. Rushton, Williams & Crenshaw, of Montgomery, for appellee.

MAYFIELD, J. This appeal involves the question of the liability to the state of the commissioner of agriculture and industries and his official bondsman as for the default

or fraud of the special food and drug clerk appointed by the commissioner, such default consisting in the conversion of state funds by such clerk, in his official capacity, under and by virtue of statutes of this state providing regulations as to the manufacture and sale of feedstuffs. See Acts 1909, p. 269; Acts 1911, p. 104. There is no attempt here to fix liability on the state officer or his surety as for any fault, neglect, or fraud on the part of the officer in the making of the appointment of this particular clerk, nor as for subsequently improperly watching or supervising this defaulting employé. The contention of the state is that the law in the particular case made the commissioner liable, and that of course the commissioner's bond is liable as for any official default of his. It is conceded by the state that unless the facts above referred to fix liability, no liability exists.

[1] The general proposition that an officer is not liable for the defaults and misfeasances of his clerks or assistants, even though they are appointed by him and are under his control, in the absence of allegation and proof that the officer was negligent or at fault in failing to exercise proper care and prudence in selecting the assistant or clerk, or in failing to properly supervise and superintend the acts and services of such employé in the work for which he was so selected, the doing, or failure to do which caused the loss or injury or damage, is well settled. In such cases, in the absence of a special statute or law to the contrary, the assistant or clerk, and his bondsmen if any he have, are liable, but not the officer or his bondsmen. This has been repeatedly decided by this and most other courts. See the case of Raisler v. Oliver & Co., 97 Ala. 710, 12 South. 238, 38 Am. St. Rep. 213, where the authorities are collected and cited, and 31 Cyc. pp. 980–984, and note, also collecting the authorities. Of course, for this rule to apply, the law must authorize the appointment of such clerk or assistant, so that by virtue of the law and of the appointment the clerk or assistant became in a sense, an officer himself. If the superior officer, on his own account and without authority of law, should appoint or employ such aid, the former would be liable, the doctrine of respondent superior applying. The reason for this rule was thus stated by this court in the case of Central, etc., Co. v. Lampley, 76 Ala. 365, 52 Am. Rep. 334:

"It is well settled that public officers are exempt from liability for the acts and defaults of those employed under them to assist in the performance of their official duties. Notwithstanding the vigorous dissenting opinion of Lord Holt, since the decision in Lane v. Cotton, 1 Ld. Ray. 646, it has been generally held that neither the Postmaster General, nor an assistant or local postmaster, is responsible for the negligence or willful wrongs of the persons employed in assisting him in the discharge of his public duties and functions. The rule rests on considerations of public policy, and on the ground that such persons are acting in the capacity of public agents, and not as the private agents of the officers. It is conceded that a public officer is liable for his own misconduct or negligence, and for the misconduct or negligence of his subordinates, where he is invested with their selection or appointment, and from carelessness or unfaithfulness appoints incompetent or untrustworthy persons."

It is true that these instances were of officers of the Post Office Department of the federal government; but the decisions were rested upon general principles, and not upon special statutes, state or federal. Other courts have taken a different view of the question. See note to 38 Am. St. Rep. 216. We can see no reason why a different rule should be applied to other officers, unless the statutes so provide. It is true that we have statutes making certain officers liable as for the acts of their assistants and clerks; in such cases the special statute, of course, controls. It is insisted by the state that there is a special statute which controls in this case, while the defendants contend, and the trial court holds, that there is no such special law which applies.

The two statutes above referred to were passed by Legislatures of this state to regulate and control the manufacture, sale, etc., of feedstuffs in Alabama. Acts 1909, p. 269; Acts 1911, p. 104. Each act provides for a clerk, and that the commissioner of agriculture and industries shall appoint him, and each prescribes duties of the commissioner and of the clerk. Section 9 of the act of October, 1909, expressly provides that the commissioner and his bondsmen shall be liable as for certain defaults of the clerk so provided for; and if it applied and was in force when the defaults of the clerk accused were committed, then the commissioner and his bondsman (appellees here) are liable. If it was not then of force, but was repealed by the subsequent act of 1911, which contains no such or similar provision, then the appellees are not liable, as the trial court ruled.

[2] So the question resolves itself into, or is reduced to, the inquiry whether or not the former act was repealed, or, at least, section 9 thereof, by the subsequent act of 1911. The two acts deal with the same general subject. While the latter act does not directly refer to or mention the first, yet many of its provisions necessarily repeal or take the place of provisions of the first—even to the appointing of the clerk and the fixing of his duties, as well as the fixing of certain duties of the commissioner. It would be impossible for both acts to stand and be enforced, because their provisions are in conflict; and to that extent, of course, the latter must control. It is true that some provisions are common to both acts and identically expressed, and as to any such it would be immaterial which act is invoked. The question important to this decision is, Did the omission of any provision in the later act corresponding with or referring to the matter contained in section

9 of the former act work a repeal of the former section? It is very true that all the provisions of the later act (that of 1911) can be just as well enforced with section 9 of the former act standing as if it were repealed.

The question of importance, however, is, What was the legislative will? Did the Legislature intend for the former act to remain the law, except in so far as it was changed by the subsequent act; or did they intend that the later act should be the whole law on the subject, and that it should take the place of the former? We are constrained to hold with the trial court that the intent of the Legislature was that the later act should be complete in itself, and that it should not operate as a mere supplement of the first. Had it been intended as a mere amendment of the first, the title would have so styled it, as that is the usual way of amending such statutes, and the Constitution has provisions on this subject. See section 45 of the Constitution. If it was not intended as an amendment, nor as a mere supplement of the first act, but was intended as a whole, and to embrace the entire law on the subject, then the second enactment would undoubtedly have embraced section 9 of the former act had it been by the Legislature thought proper or best. It is impossible to read the two acts without reaching the conclusion that the later expression was intended as a substitute for the former, and not as an amendment or a supplement thereof.

It appears to us that the Legislature of 1911 intended, in passing the act above referred to, that it should be the only and exclusive rule or law governing the manufacture, sale, etc., of feedstuffs in this state. The rules to be applied in cases like this have been repeatedly stated, but the following, among them, may well be restated here:

"Statutes may be repealed by implication, or by express legislative enactment; and it is well settled that a subsequent statute, which is clearly repugnant to and inconsistent with a former one, operates a repeal of the latter. Or, if the later statute is manifestly and plainly intended to prescribe the only rule that shall govern in reference to the particular matter, it necessarily repeals the prior statute. Sedg. Stat. & Cons. Law, 104. It is true the doctrine of the repeal of statutes by implication is not favored; and when two statutes are capable of a fair and just exposition, so that the two can stand, that exposition will be adopted, rather than a construction which will render the latter a repeal by implication of the former. Wyman v. Campbell, 6 Port. 219, 31 Am. Dec. 677. But if they are not capable of such exposition without doing violence to the legislative intent—if there is a manifest repugnancy of the one to the other—the former statute must yield to the last expression of the legislative will. George v. Skeates, 19 Ala. 738." Riggs v. Brewer, 64 Ala. 285.

The statute (Acts 1903, p. 290) redistricting the public schools is a re-enactment of the entire law on the subject of district and public schools, and as to the management of the same, and was intended to set up a new system, and whatever power any school officer may have on this subject must be derived from this act; it was not an amendment of the old law, but was a substitution of this law for the old, and therefore repealed it. Gibson v. Mabry, 145 Ala. 112, 40 South. 297. A subsequent act appropriating money for the operation or maintenance of a state department, as that of archives and history, fixing the amount to be paid to such department, and naming the purposes for which it is to be paid, held to repeal a former statute appropriating a given amount for the maintenance of the department in excess of the salary of the director of the department. Owen v. Beale, 145 Ala. 108, 39 South. 907.

It follows that there is not yet shown any liability on the part of appellees as for the default of the clerk provided for by the act of 1911,

Affirmed.

ANDERSON, C. J., and SOMMERVILLE, and THOMAS, JJ., concur.