88 So.2d 689

Homer CARTER

v.

CITY OF GADSDEN et al.

7 Div. 234.

Supreme Court of Alabama.

Aug. 18, 1955.

Rehearing Denied June 30, 1956.

Roy D. McCord and Rowan S. Bone, Gadsden, for appellant.

Hawkins & Rhea, Gadsden, for appellees.

LAWSON, Justice.

This suit was brought in the circuit court of Etowah County by Homer Carter against the City of Gadsden, a municipal corporation; Roy Wallace, individually and as Mayor of the City of Gadsden; Carl Temple, individually and as Electrical Inspector of the City of Gadsden; and E. L. Mount, individually, and as City Fire Marshal of the City of Gadsden.

Demurrer was sustained to the original complaint which consisted only of Count One. The complaint was amended by adding Counts A, A–1 and B–1, but demurrer was sustained to the complaint as thus

amended. Thereafter the complaint was amended by adding Count C and by withdrawing all other allegations of the complaint as amended.

Count C reads as follows:

"Plaintiff claims of the Defendants, separately and severally, the sum of One Hundred Thousand Dollars ($100,-000.00) as damages, for that heretofore, to-wit, on the 19th day of August, 1952, Plaintiff was the owner of and the operator of a large dry cleaning plant and the building in which the same was being operated at number 817 East Broad Street, in the City of Gadsden, Etowah County, Alabama, and the Plaintiff avers that at said time he had paid the city of Gadsden all legally required taxes, fees and licenses to operate said dry cleaning plant, and Plaintiff avers that at said time his said dry cleaning plant, and all of the equipment, appliances and appurtenances thereto fully and completely conformed to and with all of the legal requirements of the said City of Gadsden, and Plaintiff avers that as a matter of law, and as a matter of right, he had the right to operate said dry cleaning plant at said time and place, and Plaintiff avers that all electrical installations in said place dry cleaning Plant and building were safe and did not constitute a fire hazard and were not otherwise dangerous to human life, and did not in its relation to its existing use constitute a hazard to safety by reason of inadequate maintenance, dilapidation, obsolescence or abandonment, and all of such electrical installations were legal, and Plaintiff avers that on said date the Defendant, Roy Wallace, while acting individually and while acting as Mayor of the City of Gadsden, and while acting as an agent or servant of the City of Gadsden, a municipal corporation, and while acting within the line and scope of his duties of service as such agent to the City of Gadsden, and the said Carl Temple, while acting individually and while acting as the electrical official of the City of Gadsden, and while acting within the line and scope of his duties of service to the City of Gadsden, and the said E. L. Mount, while acting as an electrical official of the City of Gadsden, and while acting individually, and while acting as an agent or servant of the City of Gadsden, and while acting within the line and scope of his duties of service to the City of Gadsden; did maliciously, illegally and wrongfully order and direct the Alabama Power Company, a Corporation, who were exclusively furnishing the electricity for the Plaintiff's said building and place of business, to disconnect said electricity from said place of business and no longer furnish electricity therefor. Plaintiff avers that said Defendants, Roy Wallace, Carl Temple and E. L. Mount, while acting as aforesaid, and while acting as the legal electrical officials of the City of Gadsden, maliciously, wrongfully and illegally caused said electricity to be so cut off or be disconnected from said building and the said plant of said Plaintiff under the authority given to them under Chapter One, Section 103 of the Building Code of the City of Gadsden, which said building code was passed, approved, adopted and published by the City of Gadsden on the 1st day of March, 1949, and was in full force and effect on the said 19th day of August, 1952. And the Plaintiff avers that as a proximate consequence of the said malicious, illegal and wrongful act or acts of the Defendants, while acting as aforesaid, at said time and place, the Plaintiff lost the use of his dry cleaning plant and building, and lost a large amount of time from his employment, lost the rent on his said building, lost all of the good will and trade of his said business, and Plaintiff was greatly vexed, humiliated, embarrassed and made sick and sore, and Plaintiff avers

that he was so injured and damaged as the proximate consequence of said malicious, illegal and wrongful act or acts of the said Defendants, while acting as aforesaid, at said time and place, and to Plaintiff's full damage."

Demurrers interposed to Count C by the City of Gadsden, Roy Wallace, Carl Temple and E. L. Mount in their official capacities were sustained. Demurrers of Wallace, Temple and Mount interposed to that count in their individual capacities were overruled. Thereafter there was an agreement to plead in short by consent.

■ The cause came on for trial before the court and a jury. The plaintiff rested after presenting his own testimony and that of an official of the Alabama Power Company. Subsequent events are disclosed by the following judgment entry:

"Ruling On Motion To Exclude Evidence, And Non Suit.

"On this the 25th day of November, 1953, come the parties by attorneys, and the issues being joined and the plaintiff having presented his evidence and rested in this cause, thereupon the following motion was made by each defendant separately and severally, to-wit: 'Defendants, separately and severally, move to exclude the evidence in this case and that the defendants, separately and severally, be discharged, and that judgment be entered in their favor, separately and severally.' And after due consideration of the said motion, It is ordered and adjudged by the Court that said motion be and the same is hereby sustained as to the defendants Roy L. Wallace and E. L. Mount, and further that said motion be and the same is hereby overruled as to the defendant, Carl Temple. And to all of these rulings of the Court, the plaintiff duly excepts.

"Comes now the plaintiff and hereby takes a non suit, due to adverse rulings by the trial Court, with Bill of Excep-

tions to the Supreme Court of Alabama. It is therefore ordered and adjudged by the Court that this cause stand dismissed and held for naught, and that the defendants recover judgment against the plaintiff for the costs of suit, for which let execution issue."

From that judgment the plaintiff below has appealed to this court. It is a final judgment which "put the case out of court." Wood v. Coman, 56 Ala. 283, cited approvingly in Martin v. Alabama Power Co., 208 Ala, 212, 94 So. 76; Thomas v. White, 244 Ala. 128, 12 So.2d 567; Gentry v. Swann Chemical Co., 234 Ala. 313, 174 So. 530.

■■ We will consider only those assignments of error which challenge the trial court's action in excluding the plaintiff's evidence on motions of the defendants Wallace and Mount. They are the only assignments of error argued in brief of counsel for appellant and it is well settled that assignments of error not argued in brief are treated as waived. Eddleman v. Cade, 261 Ala. 154, 73 So.2d 362. Moreover, on this appeal we are limited to a consideration of only the rulings of the court which culminated in and superinduced the taking of the nonsuit. Mullins v. Alabama Great Southern R. Co., 239 Ala. 608, 195 So. 866; Cauble v. Boy Scouts of America, 250 Ala. 152, 33 So.2d 461.

■ The practice of entertaining a motion by the defendant, at the conclusion of the plaintiff's evidence, to exclude the evidence has been condemned and criticized. Dorough v. Alabama Great Southern Ry. Co., 221 Ala. 305, 123 So. 602; Johnson v. Shook & Fletcher Supply, 245 Ala. 123, 16 So.2d 406, yet the trial court will not be put in error for doing so where the plaintiff's evidence does not make out a prima facie case. See Dorough v. Alabama Great Southern Ry. Co., supra, overruling in this respect Stewart Bros. v. Ransom, 200 Ala. 304, 76 So. 70; Mount Vernon-Woodberry Mills v. Little, 222 Ala. 605, 133 So. 710;

W. E. Herron Motor Co. v. Maynor, 232 Ala. 319, 167 So. 793; Sharpe v. Western Ry. of Alabama, 234 Ala. 507, 175 So. 542; Roebuck v. Hooie, 250 Ala. 363, 34 So.2d 460; Hamilton v. Browning, 257 Ala. 72, 57 So.2d 530; Riley v. Riley, 257 Ala. 636, 60 So.2d 432; Atlantic Coast Line R. Co.. v. French, 261 Ala. 306, 74 So.2d 266.'

On August 19, 1952, the Alabama Power Company disconnected the electricity running into plaintiff's dry cleaning plant at 817 East Broad Street, Gadsden. Plaintiff owned the building in which he operated the dry cleaning plant. He constructed the building in 1946 or 1947 and had continuously operated a dry cleaning establishment in part of the building. The Alabama Power Company acted in accordance with a written order signed by the defendants Temple and Mount, a copy of which order went to Mayor Wallace. Temple signed the order "as Electrical Inspector of the City of Gadsden, Alabama" and Mount signed as "City Fire Marshall, City of Gadsden, Alabama." The reason given to the Alabama Power Company for the order was "because the electrical installations or wiring on said premises are in violation of the provisions and requirements of the Official Building Code of the City of Gadsden, Alabama."

Section 103.1, Chapter 1 of the Building Code of the City of Gadsden provides:

"All electrical installations, regardless of type, which are unsafe or which constitute a fire hazard, or are otherwise dangerous to human life, or which in relation to existing use constitute a hazard to safety by reason of inadequate maintenance, dilapidation, obsolescence or abandonment are, severally in contemplation of this section, unsafe electrical installations. All such unsafe electrical installations are hereby declared illegal and shall be abated by repair or removal. When in the opinion of the electrical official the hazard involved is sufficient to warrant disconnection of electricity, he shall then connection of electricity, he shall then disconnect or order the utility company to disconnect immediately."

■ The validity of Section 103.1, Chapter 1, of the Building Code, supra, is not questioned. No other provision of the Building Code of the city or of any other ordinance was introduced in evidence. We do not take judicial notice of ordinances of a city the size of Gadsden. Owen v. Hampson, 258 Ala. 228, 62 So.2d 245. See § 429(1), Title 7, Code 1940, 1953 Cum. Pocket Part, p. 79.

■ Plaintiff's case is grounded in the main on the averment that the defendants "did maliciously, illegally and wrongfully order and direct the Alabama Power Company, a corporation, who were exclusively furnishing the electricity for the plaintiff's said building and place of business, to disconnect said electricity from said place of business and no longer furnish electricity therefor." By making the averments that the defendants acted "maliciously, illegally and wrongfully" the plaintiff assumed the burden of offering evidence to support such averments.

■ Before considering the question as to whether or not the plaintiff met that burden, it is necessary to determine what meaning is to be attributed to the words last quoted. There is no discussion of that question in briefs filed here on behalf of the parties, but we think that those words as used in this complaint should be construed as charging that the defendants, although acting under color of their official positions, did so without legal right and acted purposely with the intention of violating the rights of the plaintiff to his injury. Woodson v. Bailey, 210 Ala. 568, 98 So. 809; Mobile County v. Williams, 180 Ala. 639, 653, 61 So. 963; Snead v. Phillips, 31 Ala.App. 148, 13 So.2d 435. When that construction is placed on the words "maliciously, illegally and wrongfully," as used in the complaint, we feel that a cause of action is stated against the defendants. We do not know authority or see reason in

absence of statute for saying that those who act as this complaint charges the individual defendants with acting should not be required to answer in damages to the injured person. Wisher v. City of Centralia, 273 Ill.App. 168; Carr v. City of Anchorage, D.C., 114 F.Supp. 439. Cf. Baker v. Mueller, D.C., 127 F.Supp. 722.

■ We have made a detailed analysis of the testimony adduced on behalf of the plaintiff, which has been given careful consideration in consultation. However, we do not think any useful purpose will be served by including that detailed statement in this opinion.

The evidence shows beyond peradventure that the city authorities of Gadsden had been trying to get the plaintiff to have the electrical wiring in his place of business changed so as to comply with the requirements of the City's building code since as early as 1948 or 1949. It is clear from the evidence that the plaintiff recognized that such repairs should be made. Although he promised on at least two occasions, in writing, to have those repairs made he failed to do so and his explanation for not carrying out his promises is that the city authorities refused to permit him to make the improvements himself, although he was in all respects qualified to do so in view of his long experience as an electrician.

The record shows that as late as July 25, 1952, in a letter which plaintiff wrote to the defendant Wallace, he recognized that the electrical installations in his plant did not comply with the city's requirements.

Plaintiff was permitted to testify over the objection of the defendants to the effect that on August 19, 1952, the day on which the electricity was cut off from his place of business, that the electrical wiring and electrical installations therein fully met the standards prescribed by the building code of the city of Gadsden. It is apparent that the trial court permitted the plaintiff to so testify after having concluded, no doubt, that he had shown that he was sufficiently familiar with the building code of the city and with electrical installations in dry cleaning plants to express such an opinion as an expert.

But the fact remains that the record before us shows that the Alabama Power Company acted on August 19, 1952, under a direction or order given it on August 13, 1952, signed by the defendants Temple and Mount. That order was just one of several which had been given to the Power Company after notice was given to plaintiff, but action had not been taken thereon because of the promises made by the plaintiff to have the conditions in his plant remedied. In so far as the evidence before us shows, the conditions in the plaintiff's place of business on August 13, 1952, were the same as they were on July 25, 1952, on which date, as heretofore indicated, plaintiff admitted in writing that the electric wiring and other electrical installations did not meet the city's requirements.

The only evidence which counsel for plaintiff argues in brief as indicating that Mount acted in any wise other than in good faith and in accordance with the duties of his office is that which tends to show that on one occasion several months prior to the time the electricity was disconnected he told the plaintiff in effect that if he did not comply with the city's requirements that he, Mount, would have to declare plaintiff's place of business to be a fire hazard. In our opinion this falls far short of showing that Mount acted wrongfully, illegally or maliciously.

In so far as the defendant Wallace is concerned, the record shows clearly that he and the plaintiff had been friends for some time. Plaintiff supported Wallace in his race for mayor and Wallace and his family had been customers of plaintiff. Wallace was not mayor when plaintiff was first advised that the conditions in his place of business did not meet the city's requirements and when, after taking office, he was apprised of the situation by Temple and Mount, Mayor Wallace requested a conference with plaintiff, at which time plaintiff expressed appreciation for the leniency

which the city authorities had extended to him and promised to have the required changes made within a period of sixty days from that date, to wit, February 19, 1952. However, plaintiff failed to comply and in July Temple and Mount again notified plaintiff that the corrections would have to be made or they would have to request the Power Company to cut off his electricity. Plaintiff did not make the corrections and Temple and Mount ordered the Power Company to discontinue electric service. But Mayor Wallace had another conference with plaintiff, July 25, 1952, at which time plaintiff again recognized the fact that there were conditions which needed to be corrected, and we construe the record to show that he promised to have those conditions rectified. In any event, Mayor Wallace shortly after that conference was held wrote a personal letter to the Alabama Power Company asking them to disregard the previous notice which had been given it by Temple and Mount to disconnect plaintiff's electricity.

The action which was taken thereafter on August 13, 1952, to which we have alluded above, was taken by Temple and Mount in so far as this record shows without the express direction of Mayor Wallace. The matters which we have heretofore related concerning the relationship of plaintiff and Mayor Wallace and the courtesy which the latter had extended to the former clearly refute the charge that such part as the mayor played in the matter of disconnecting plaintiff's electricity was done with any ill feeling or intentional injury to the plaintiff. Nor are we impressed that the statement made by plaintiff that in the conference of July 25, 1952, Mayor Wallace indicated disapproval of plaintiff's presence and participation in a public meeting held sometime between February 19, 1952, and June 28, 1952, in opposition to a measure in which the Mayor was interested, is sufficient to support the averments of the instant complaint.

Mayor Wallace, under the facts of this case, cannot be held liable for the mis-

conduct of Temple, if the latter could be said to have been guilty of misconduct. State v. Kolb, 201 Ala. 439, 78 So. 817, 1 A.L.R. 218; Langis v. Byrne, 222 Ala. 183, 131 So. 444; Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234; Holland v. Fidelity & Deposit Co. of Maryland, 225 Ala. 669, 145 So. 131.

We have given this case careful and studied consideration and feel constrained to the conclusion that the plaintiff had failed to make out a prima facie case at the time the trial court on motion excluded the evidence as to the defendants Mount and Wallace, and hence the judgment appealed from should be affirmed.

Affirmed.

SIMPSON, GOODWYN, MERRILL and MAYFIELD, JJ., concur.

On Rehearing

LAWSON, Justice.

This application for rehearing has been pending for a long time. It was filed by counsel who did not participate in the trial below or on the original submission here. We do not frown upon applications for rehearing for they are often helpful and we do not expect counsel to come apologetically in the discharge of this important function, but boldly and manfully we wish to see him stand up and labor with us when done in a considerate manner. But the brief filed in support of this application for rehearing is of such a nature that the author of the opinion has felt constrained to have the other participating Justices read it carefully in the light of the record before us. They have done so. As indicated in the original opinion the questions presented are not without difficulty but they were decided only after a careful and painstaking consideration of the record, the briefs filed on original submission and considerable effort at research on our part.

We feel that our holdings on original submission should stand.

Application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.