96   120
106  580
109  142

# Amos *v.* The State.

### *Indictment for Murder.*

1. *Competency of juror; residence in county* —A juror must be a resident of the county in which he is summoned to serve on the jury, whether grand or petit; but a proposed juror is not shown to be a non-resident by his sworn statement to the effect that he lives near the county line, and does not know whether he lives in that county or in an adjoining one, where he also states that he claims the county in which the trial is had as the county of his residence, and that he has been living there, and voting in said county, for ten years.

2. *Homicide; evidence of the character of the deceased for turbulence or violence; when admissible* —In a trial for homicide, evidence of the character of the deceased for turbulence or violence is not admissible, when there have been introduced in evidence no facts which, if qualified or explained by the character of the deceased, though desperate and bloodthirsty, could tend to afford defendant any reasonable ground to believe he was at the time in peril.

3. *Error in excluding evidence cured by its subsequent admission.*—A party could not have been injured by the exclusion of evidence offered by him, when the record shows that he was permitted to introduce this evidence later in the progress of the trial.

4. *When evidence of acts of another person is not admissible against defendant in a trial for murder.*—On the trial of R. alone under an indictment charging R., B. and T. with murder, where there is no proof of a conspiracy, but the evidence tends to show that B. had no connection with the killing, evidence that B., while with R. and T. after the killing, "was toting a chopping axe" is irrelevant, and should be excluded.

5. *Homicide; evidence as to defendant warning deceased against committing trespass.*—In a trial for homicide, where the defendant claimed that he acted in self-defense, and there was evidence tending to show that defendant went to the house where the killing occurred to warn the deceased, who was there in company with a woman, against trespassing on property of defendant's deceased wife which was in said house, it is competent for the defendant to prove that the woman who was with the deceased and trespassing on said property, "was a known prostitute."

6. *Cross-examination; what latitude allowed.*—A witness may be questioned on cross-examination, not only on the subject of inquiry, but upon any other subject however remote, for the purpose of testing his character for credibility, his memory, his means of knowledge, or his

accuracy; but not as to the details of his personal conduct having no connection whatever with the subject of inquiry.

7. *Homicide; charges ignoring duty to retreat.*—In a trial for homicide, charges requested by the defendant, defining his rights while acting in self-defense, but which ignore the defendant's duty to retreat, if he can do so with safety, are properly refused.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case charged Bud Amos, Rube Amos, and Tobe Amos with the murder of William Fuller. The appellant, Rube Amos, alone, was tried, and he was convicted of murder in the second degree:

The bill of exceptions recites: "In organizing the jury for the trial of this cause, one J. W. Rush was called and sworn, and answered all the other questions as to his competency, except that he said he did not know whether he lived in De-Kalb county or not; that he lived near where they said the county line was, but did not know where the line was, or whether he lived in Jackson or DeKalb county; that he claimed DeKalb county, and had been living there and voting in DeKalb county for ten years. When the organization of the jury was completed, the defendant had not exhausted his peremptory challenges, but had seven remaining. The defendant insisted that said Rush was not a competent juror, and challenged said juror for cause. The court overruled said challenge, and put said juror on the defendant; and to this ruling of the court the defendant duly excepted, and then challenged said juror peremptorily."

The State introduced evidence tending to show that the defendant went to an old out-house where the deceased was with a woman, Liz Regan, and while there became involved in a difficulty with the deceased, and killed him. The testimony for the defendant tended to show that defendant's wife had died a short time before the killing, and he had moved her bed and clothing to a house near said out-house; that the deceased, William Fuller, had been staying at night with the woman Liz Regan in the house in which defendant had left his deceased wife's property, and had been sleeping on the bed; that the defendant went to said house, found no one in it, but as he was leaving the place he passed said out-house, from which the deceased called to him to come by; that the defendant walked into said out-house, where the deceased and Liz Regan were, and told the deceased "not to take that woman on his dead wife's things;" that Fuller, who, when the defendant came in, was sitting, holding his

gun, got between the defendant and the door of said out-
house, leveled his gun upon the defendant, saying, "D—n
you! I will kill you. I will blow you to hell;" that the de-
fendant knocked up the gun, and as it went off he was shot
in the hand; that thereupon he got into a scuffle with Fuller
and, in trying to get away from him, cut him with a knife.
Dr. Roden was the first witness introduced by the State.
He testified as an expert in reference to the wounds inflicted
upon the deceased, but did not testify as to any of the cir-
cumstances of the killing.   This witness having testified that
he knew the general character of the deceased in the neigh-
borhood in which he lived, the defendant's counsel asked
him the following questions: "Is his character good or
bad?"   "What was the character of Will Fuller for being a
fighting man?"   "What was Will Fuller's character as a
fussy, bloodthirsty man?"   "Is it not a fact that Will Fuller
was known in that community as a desperate, bloodthirsty,
fighting man?"   The solicitor separately objected to each
of these questions, the court sustained the objection to each
of them, and the defendant separately excepted.   The bill of
exceptions then states that "later in the progress of the
trial the defendant was allowed to introduce the evidence to
be elicited by the several foregoing questions, to which ob-
jections were sustained, and had an opportunity to recall
said witness Roden."   One Bates, a witness for the State,
testified that he saw Rube Amos, Bud Amos and Tobe Amos
together, coming from the direction of the house where the
difficulty occurred, that they passed witness' house, and
stated to witness that Rube Amos had hurt Will Fuller very
badly.   The solicitor then asked this witness the following
question: "Did either one of the other Amoses [meaning
Bud or Tobe] have anything?"   To this question the de-
fendant, Rube Amos, objected, because it called for testi-
mony which was illegal, irrelevant and incompetent as to
him.   The court overruled the objection, and the defendant
excepted.   The witness, in answer to the question, said:
"Yes, sir, Bud Amos was toting a chopping axe."   J. F.
Slaton was examined as a witness for the State.   On his
cross-examination, he stated that he knew Liz Regan.   The
defendant then asked this witness the following question;
"If Liz Regan was not a known prostitute?"   The State ob-
jected to this question, the court sustained the objection,
and the defendant duly excepted.   One Upton, a witness for
the defendant, testified that he met the deceased, Will Ful-
ler, and Liz Regan the night before the killing, and they
slept on a bed together in the Ben Amos house, which was

the house in which, the evidence tended to show, defendant had left the property of his deceased wife. On the cross-examination of this witness, the solicitor asked him the following question: "Was it not at a still you met them?" The defendant objected to this question, the court overruled the objection, and the defendant duly excepted. Upon the further cross-examination of this witness, he stated that he met Liz Regan the Sunday evening before the killing, when no one else was with her. The solicitor then asked said witness the following questions: "Didn't you go somewhere with her?" "Do you know what you did?" The court overruled the defendant's objection to each of these questions, and the defendant separately excepted to each ruling.

Upon the introduction of all the evidence, the defendant requested the court to give the following written charges to the jury, and separately excepted to the refusal of the court to give each of them as asked: (1.) "The court charges the jury that the defendant had the right to peaceably go to the old house where Will Fuller was, and warn him not to enter into his house or upon his dead wife's things; and if the jury are satisfied, from all the evidence, that he did nothing more, and that Will Fuller assaulted him with a gun, and there was an apparent necessity to strike in self-defense, he had the right to do so, even though death ensue." (2.) "The court charges the jury that when an unlawful violent attack is made on one, which reasonably indicates that serious bodily injury is about to be inflicted, the assailed may kill his assailant at once; and if they further find from the evidence that Rube Amos was not in fault in provoking or bringing on the difficulty, then they must find the defendant not guilty."

L. A. DOBBS, and HOWARD & EWING, for appellant. 1. It should affirmatively appear that a proposed juror is competent, before he is put on the defendant, whether the defendant has exhausted his challenges or not.—Code, §4331; *Iverson v. State*, 52 Ala. 170; *Birdsong v. State*, 47 Ala. 68. 2. The court should have allowed the defendant to ask Dr. Roden the questions as to the deceased's character. *Franklin v. State*, 29 Ala. 14. 3. The evidence to show the character of Liz Regan should have been admitted.—*Ingram v. State*, 67 Ala. 67. 4. The charges requested by the defendant should have been given.—*DeArman v. State*, 71 Ala., 351; *Storey v. State*, 71 Ala. 329.

WM. L. MARTIN, Attorney-General, for the State, cited *Davis v. State*, 92 Ala. 20; *Rutledge v. State*, 88 Ala. 85;

*Cribbs v. State*, 86 Ala. 613 ; *Poe v. State*, 87 Ala. 65 ; *Mitchell v. State*, 60 Ala. 26 ; *Eiland v. State*, 52 Ala. 322 ; *King v. State*, 90 Ala. 612.

STONE, C. J.—1. One of the qualifications of a juror is that he should be a resident of the county in which he is summoned to serve on the jury, whether grand or petit. What constitutes a personal resident of any county or place has been repeatedly decided by this court. Rush, who was summoned as a special juror for the trial of the present case, is not shown to be a non-resident of DeKalb county. The fact that he did not know whether he lived in Jackson or DeKalb county is out-weighed by the additional fact that he claimed DeKalb county as the county of his residence, and had been living there and boarding in said county for ten years. His sworn statement to this effect was sufficient to make him a competent juror, and it was not error to put said juror upon the defendant.

2. There was no error in excluding the testimony of the witness Dr. Roden in reference to the character of the deceased. At the time the questions were asked touching the character of the deceased, no evidence had been introduced which rendered an inquiry as to his character admissible. The character of the deceased for turbulence or violence is only admissible as evidence for the accused in cases of homicide when it tends to qualify or explain the conduct of the deceased, or to illustrate the circumstances attending the homicide, and which, when so qualified, explained or illustrated, have the tendency to produce in the mind of the accused a reasonable belief of imminent danger, or which tends to aggravate the conduct of the deceased in such a way as will mitigate the offense to a lower degree. *King v. The State*, 90 Ala. 612 ; *Lang v. The State*, 84 Ala. 1 ; *Franklin v. The State*, 29 Ala. 14. At the time the questions pertaining to the character of the deceased were asked Dr. Roden, there had been introduced in evidence no facts which, if qualified or explained by the character of the deceased, though desperate and blood-thirsty, could tend to afford defendant any reasonable ground to believe he was, at the time, in peril. They were, therefore, properly excluded at this stage of the trial. Furthermore, the defendant could not have been injured by this ruling, because the record shows that he was permitted to make this proof later in the progress of the trial.

3. The court erred in allowing the witness Bates to testify in answer to the question, "Did either one of the other

Amoses (meaning Bud and Tobe) have anything?"   This witness answered to said question saying :   "Yes, sir, Bud Amos was toting a chopping axe."   We can not perceive the relevancy of this testimony.   Although the indictment charges Bud Amos, Rube Amos and Tobe Amos with the murder of Will Fuller, only Rube Amos was on trial in the present proceedings.   The record contains no proof of a conspiracy ; but tends rather to show that Bud Amos had no connection whatever with the killing.   It is not our province to say whether or not this testimony prejudiced the jury against Rube Amos, who was the only person on trial.

4.   The question asked the witness Slaton on cross examination in reference to the character of the woman Liz Regan should have been allowed.   It is the policy of the law to allow greater latitude on cross examination.   While it is often the case that the relevancy of any particular question, considered without reference to the other facts and circumstances of the case could not be perceived, still it is equally true that if such questions were not allowed on cross examination, the ends of justice would often be thwarted.   The complaint of the defendant against the deceased was that he was trespassing upon the property of his dead wife.   This trespass was committed together with the woman Liz Regan.   If her character was such as was sought to be elicited by the question asked the witness Slaton, it would certainly aggravate the grievance, and would have given the defendant a more just ground of complaint, which would have warranted him in warning the deceased against the repetition of such a trespass.

5. The first question asked by the solicitor on cross-examination of the witness Upton, to which an exception was reserved, finds justification in the rule which is announced in Roscoe's Criminal Evidence, in the following words : 'A witness may be questioned on cross-examination not only on the subject of inquiry, but upon any other subject, however remote, for the purpose of testing his character for credibility, his memory, his means of knowledge, or his accuracy."   Roscoe's Crim. Ev. (7th. Edn.) p.   140.   The action of the court in overruling the objection to the other two questions asked the witness Upton, to which exceptions were reserved, can not find support in the broadest latitude that is allowed on cross-examination.

6. The court did not err in refusing to give either of the charges requested by the defendant.   Each of them ignored the duty to retreat, as is announced by the repeated decis-

[Billingsley v. The State.]

ions of this court.—*Davis The State*, 92 Ala. 20; *Rutledge v. The State*, 98 Ala. 85; *Cribbs v. The State*, 86 Ala. 613; *Poe v. The State*, 87 Ala. 65; *Mitchell v. The State*, 60 Ala. 26; *Eiland v. The State*, 52 Ala. 322.

Reversed and remanded.

