# Long v. Booe.

*Action for the Alienation of Wife's Affections.*

1. *Action for alienation of wife's affections; admissibility of letters interchanged between husband and wife.*—In an action by a husband to recover damages for the defilement of his wife and the alienation of his wife's affections, letters interchanged between husband and wife prior to her infidelity, and which contained expressions of love and affection for each other, are admissible in evidence to show the terms upon which the husband and wife lived together before the defilement.

2. *Same; when charge of court assuming fact as proved properly given.* As a general rule, a court in charging the jury should not assume the existence of a fact shown only by parol evidence, however free from conflict such evidence may be; but if all the evidence goes, without conflict, to the establishment of the fact against a party to the cause, and a part of that evidence is admitted by such party himself, the truth of such evidence may be assumed by the court, and the court may charge upon such facts without hypothesis; and when, in an action brought by a husband to recover damages for the defilement of his wife and for the alienation of her affections, the evidence shows, without conflict, that the defendant was guilty of illicit relations with the plaintiff's wife, and the defendant himself admitted it, and the evidence further showed without controversy, and the defendant also admitted, that the criminal intimacy was continued after she had joined her husband, a charge which assumes that the defendant pursued the wife with his attentions, and instructs the jury that his continued defilement of plaintiff's wife after she had rejoined the plaintiff was a matter to be looked to by the jury in the assessment of damages, is free from error.

Vol. 106.

[Long v. Booe.]

3. *Same; damages for loss of wife's services; what recoverable.*—In actions for criminal conversation, prosecuted by husband for the defilement of his wife, where there is a claim of damages for the loss of the wife's services, the term "services" does not necessarily or ordinarily involve a loss measureable by pecuniary standards of value, such as obtain where the master is deprived of the labor of his servant, or the father is deprived of the help of his child, but the term implies whatever of aid, assistance, comfort and society the wife would be expected to render or bestow upon her husband under the circumstances that surround them, or in the condition and station of life they may be placed; and the injury wrought by the wrong-doer in such cases to the husband being an injury to his feelings, his comfort, his pride, his affections and to his conjugal, rather than to his property, rights, the damages to be allowed are penal, rather than compensatory; and the plaintiff is entitled to substantial damages though he prove no resulting expense or loss of services.

4. *Same; proof of place where the act was alleged to have been done not necessary; evidence of the commission in other places admissible in aggravation.*—An action by a husband to recover damages for defilement of his wife and for the alienation of her affections being transitory in its nature, the place of the commission of the acts complained of need not be alleged, and if alleged need not be proved; and when the complaint avers, and the evidence shows, the commission of the alleged wrong in a certain county, where the action is brought, it is competent to show in connection with this evidence, and in aggravation, that such wrongs were but the continuation of a liaison previously begun in a different county.

5. *Evidence; impeaching testimony; when permissible for witness to testify as to relation between him and one of the parties to the suit.*—When a youth under 21 years of age is examined as a witness for the defendant in a cause, and his credibility is sharply put in issue before the jury, it is within the discretion of the trial court, who saw the demeanor of the witness on the stand, to permit the plaintiff to elicit from said witness on cross-examination the fact that his father had been in the employment of defendant's father; this court on appeal, not being able to say but that the fact thus adduced, when considered in connection with the witness's demeanor on the stand, tended to show a relation between the families of witness and defendant, from which the jury might have inferred a bias on the part of the witness in favor of the defendant. (COLEMAN, J., dissenting.)

APPEAL from the City Court of Birmingham.

Tried before the Hon. W. W. WILKERSON.

This action was brought on July 23, 1892, by the appellee, DeWitt Booe, against the appellant, Robert W Long, to recover damages for the defilement of plaintiff's wife by defendant, and the alienation of plaintiff's wife's affections.

The complaint contained two counts. The first count alleged that the defendant, contriving and wrongfully, wickedly and unjustly intending to injure plaintiff and to deprive him of the comfort, fellowship, society, aid and assistance of his wife, and to alienate and destroy her affection for plaintiff, wrongfully and wickedly debauched and carnally knew the plaintiff's wife, and thereby alienated and destroyed his wife's affection for him, and caused plaintiff to wholly lose and be deprived of his wife's fellowship, society and assistance, which he should and would have had but for the wrong committed by defendant. The second count is the same as the first, with the additional allegations, that the alleged carnal knowledge of plaintiff's wife by defendant was alleged to have taken place in Jefferson county and elsewhere in the State; and it is further averred that by reason of the alleged wrongs committed by defendant, the plaintiff had been degraded among his acquaintances, and had suffered shame, mortification and grief. Issue was joined on the plea of the general issue.

The evidence showed without conflict that the defendant had several times had sexual intercourse with plaintiff's wife, both in Jefferson and Walker counties; plaintiff's wife and the defendant himself testifying to the facts attending such criminal intimacy. It was further shown that defendant was intimate with plaintiff's wife after she joined plaintiff in Jefferson county. The evidence for the plaintiff tended to show that he learned of the intimacy between his wife and defendant as the result of his carrying a letter to his wife, which he refused to deliver to her, until she told him who it was from, whereupon she told him it was from defendant, and then confessed to him her infidelity and intimacy with defendant. It was also shown that upon being informed of these facts he and his wife lived apart until about two or three weeks before the trial of this cause. The testimony for defendant tended to show that two other men had been criminally intimate with plaintiff's wife.

On the examination of plaintiff's wife as a witness, she was asked the following question: "What did your husband ask you in reference to the letter, and as to the person who wrote the same?" The defendant objected to this question, (1), because it called for a conversation

[Long v. Booe.] .

between the husband and wife, and she was not a competent witness to prove such conversation ; (2), because it called for a conversation between plaintiff and his wife in the absence of the defendant; and, (3), because it called for illegal and irrelevant evidence. The court overruled defendant's objection, and defendant duly excepted. Upon the witness answering that she told plaintiff defendant wrote the letter, defendant moved to exclude the answer on the same grounds interposed to the question, and duly excepted to the overruling of his motion. There were other questions asked the wife relative to the conversation between herself and plaintiff when she told him about the letter, to which defendant interposed the same objections, and separately excepted to the court overruling his several objections ; and he also made like motions to exclude the answers of the witness to the several questions, and separately excepted to the court overruling his several motions. After the close of plaintiff's testimony, defendant moved the court to exclude all conversations between plaintiff and his wife which occurred in the absence of defendant, and to exclude the confession of the wife to plaintiff of her infidelity. The court, thereupon, reconsidered its former rulings in the matter, and excluded all such evidence except so far as the same tended to show information to the plaintiff of adultery of his wife and the time he acquired such information, and instructed the jury accordingly. The plaintiff introduced in evidence and read to the jury two or three letters written by his wife to him before she met defendant, in which letters she expressed much love and affection for plaintiff. The defendant objected to the introduction in evidence of these letters, and moved to exclude them on the ground that they were illegal, irrelevant and immaterial evidence. The court overruled his objection and motion, and defendant duly excepted.

Upon the introduction of all the evidence, the court gave, at the request of the plaintiff, the following written charges to the jury :   (1.)  ''The law presumes where the defendant committed adultery with the wife, the loss of the consortship of the wife, and it is not necessary for the husband in an action for damages to prove alienation of the wife's affections, or actual loss of her society or assistance.''   (4.)  ''The court charges the jury, that in estimating the damages the jury will consider the fact

that the defendant pursued the wife with his attentions and had sexual intercourse with the wife after she had joined her husband in Birmingham, until the plaintiff had information of the adulterous intercourse." (6.) "The court charges the jury, that, under the undisputed evidence in this case, the jury will find a verdict for the plaintiff." (7.) "The court charges the jury, that, if the evidence shows that the plaintiff suffered grief, shame and mortification because of the wrongs of the defendant, they can consider that as an element of damages." The defendant separately excepted to the court giving each of these charges requested by the plaintiff, and also separately excepted to the refusal of the court to give each of the following written charges asked by him: (1.) "If the jury believe from the evidence that Mrs. Booe had committed an act of adultery with another man or men prior to the time defendant had sexual intercourse with her, the plaintiff can not recover any damages for the alleged alienation of his wife's affections for him." (2.) "That as the evidence shows that plaintiff and his wife are living together as husband and wife, and have been so living for two weeks or more, he is not entitled to recover any damages for the loss of the association and services of his wife while the plaintiff and his wife have been living together as such husband and wife." (3.) "That if the jury believe the evidence in this case, they can not find any damages for any loss of service of his, plaintiff's, wife alleged to have been caused by the alleged wrongs of the defendant." (4.) "I charge you, gentlemen of the jury, that you can not give any damages for any thing that defendant may have done in Walker county." (4½.) "I charge you, gentlemen of the jury, that you can not give any damages for any thing done by defendant outside of Jefferson county, Alabama, under the first count of the complaint." (5.) "That if the jury believe from the evidence in this case that the plaintiff's wife committed act or acts of adultery with another man or men, prior to the sexual intercourse of the defendant with her, then, I charge you, that you can only give the plaintiff nominal damages."

There was judgment for the plaintiff, assessing his damages at $2,500. The defendant appeals, and assigns as error, the several rulings of the trial court upon the

[Long v. Booe.]

evidence, to which exceptions were reserved, the giving of the charges requested by plaintiff, and the refusal to give the several charges asked by the defendant.

HEWITT, WALKER & PORTER, for appellant.—1. The letters expressing affection for the plaintiff were not competent evidence and should have been excluded. If they had been written while the adulterous intercourse was going on between her and appellant, they would have expressed fully as much love for him.—*Davidson v. Woodruff*, 67 Ala. 435.

2. The fourth charge requested by the plaintiff assumed the fact that the defendant pursued the plaintiff's wife with his attentions, was, therefore, invasive of the province of the jury, and should have been refused. Where a question of fact is involved, dependent upon old testimony, the credibility of the testimony must be referred to the jury, and a charge which assumes the credibility of the testimony is erroneous, though it is clear and undisputed.—*Hollingsworth v. Martin*, 23 Ala. 598; *McKenzie v. Stevens*, 19 Ala. 691; *Hopkins v. Scott*, 20 Ala. 185; *Stokes v. Jones*, 21 Ala. 736; *Abney v. Pickett*, 21 Ala. 739; *Thompson v. State*, 30 Ala. 28; *Hughes v. State*, 30 Ala. 45; *McDougald v. Rutherford*, 30 Ala. 253; *Carter v. State*, 23 Ala. 430; *Rigsby v. Norwood*, 34 Ala. 132.

3. The second charge requested by the defendant in writing should have been given. If the plaintiff is entitled to recover at all for alleged loss of services of his wife, he certainly could not recover anything for such alleged loss of services while they were living together as husband and wife for the three weeks next prior to the commencement of the trial in the court below. He enjoyed her association and services for that time, and, therefore, he had no right to recover for them for that time.

WARD & JOHN, *contra.*—1. The letters which passed between the wife and the husband prior to her criminal intimacy with the defendant were properly admitted in evidence.—Cooley on Torts, (2d ed.), 264; 1 Greenl. Ev., § 102, note. Wife competent to prove such facts. 1 Greenl. Ev., § 254.

2. After the criminal intimacy between the defendant and the plaintiff's wife, the law presumed the loss of consortship of the wife, and it was not necessary for the

husband, in a suit for damages, to prove alienation of his wife's affections or actual loss of her society and services.—*Cross v. Grant*, 13 Amer. St. Rep. 610 ; *Beragoutte v. Paulet*, 134 Mass. 123 ; *Stumm v. Hummel*, 39 Iowa, 478 ; *Verholf v. VanHouwenlenyen*, 21 Iowa, 429; *Clouser v. Claffer*, 59 Ind. 548.

3. Place is not of the essence of this action, and need not be averred, and not being averred, need not be proven. 9 Amer. & Eng. Encyc. of Law, 835 ; 1 Greenl. on Evidence, § 61 ; *Huckabee v. Sheppard*, 75 Ala. 344; *Cross v. Grant*, 13 Amer. St. Rep. 610.

The charges requested by the defendant were properly refused.—9 Amer. & Eng. Encyc. of Law, 835 ; 3 Sutherland on Damages, 744.

McCLELLAN, J.—The several exceptions reserved to testimony as to conversations between Booe and his wife on the occasion when the latter's adultery with Long was made known to the former were emasculated by the subsequent exclusion of all such evidence, except in so far as it went to show the naked fact of Booe's coming at that time to a knowledge of the infidelity of his wife ; and we do not understand that the competency of the testimony for this limited purpose is questioned by the appellant.

The only other exception taken to the admission of testimony had reference to letters which passed between the husband and wife prior to her infidelity, and which contained mutual expressions of love and affection for each other. There can be no doubt upon principle or authority of the propriety of the trial court's action in admitting these letters to "show the terms upon which the husband and wife lived together before the seduction."—1 Greenl Ev., § 102 note.

The city court properly charged the jury to bring in a verdict for the plaintiff, if they believed the evidence. This practically left open for consideration only the amount of damages to be awarded. Charge 4 given at plaintiff's request has reference to the damages to be awarded, and is not, in our opinion, open to the objections urged against it by the appellant. While ordinarily the court in charging the jury should not assume the existence of a fact shown only by parol evidence, however free from conflict such evidence may be, yet

when all the evidence goes without conflict to the estab-
lishment of a fact against a party to the cause, and a
part of that evidence is the solemn admissions of such
party himself, made under oath and in the presence of
the court, that the fact does exist, the rule we have ad-
verted to does not apply, and the truth of the evidence
may be assumed by the court. In such case the fact be-
ing clearly proved, and not only not controverted but
affirmatively admitted, there is no occasion to leave the
ascertainment of it to the jury.—*Carter v. Chambers*, 79
Ala. 223; *Marks v. Robinson & Ledyard*, 82 Ala. 69, 83;
*Brinson v. Edwards*, 94 Ala. 447, 455. This charge (4)
assumes merely that the defendant pursued plaintiff's
wife with his attention, that is, continued his attentions
to her and their illicit relations, after she had joined
her husband in Birmingham. This is fully shown by the
evidence of Mrs. Booe, is not at all controverted by any
witness directly or inferentially, and is unequivocally
admitted by the defendant himself. There was, there-
fore, no unwarranted assumption of fact in this instruc-
tion; and the soundness of the proposition it asserts,
that defendant's continued defilement of the plaintiff's
wife after she had rejoined her husband was a matter to
be looked to by the jury in the assessment of damages,
is obvious.

In actions for criminal conversation prosecuted by a
husband for the defilement of his wife it is usual to
claim damages for the loss of the wife's services. That
claim is made in this case. There was evidence that
plaintiff and his wife had been living together as man
and wife for two or three weeks before the trial. There
was no evidence of the value of the wife's services, or
the pecuniary loss to the plaintiff from a deprivation of
her services during the period they had lived apart in
consequence of her relations with the defendant. Upon
this state of case, the defendant requested the court to
charge the jury, (2), that the plaintiff was not entitled
to recover any damages "for the loss of the association
and services of his wife" for the two or three weeks just
before the trial during which they had been living to-
gether as husband and wife; and further (charge 3)
that if the jury believe the evidence "they cannot find
any damages for any loss of services of his, plaintiff's,
wife alleged to have been caused by the alleged wrongs
37

of the defendant." These requests proceed upon a mistaken idea as to what the term "services" means in this class of actions. It does not mean labor performed. It does not necessarily mean assistance in any material sense. The deprivation of services in this connection does not necessarily or ordinarily involve or imply a loss measurable by pecuniary standards of value such as obtain where the master is deprived of the labor of his servant, or even where the father is deprived of the help of his daughter. But the term, as employed here, is, as said by Judge Cooley, "used in a peculiar sense, and fails to express to the common mind the exact legal idea intended by it. Whatever may have been the case formerly," he continues, "or may now be the case in some states of society, services in the sense of labor or assistance, such as a servant might perform or render, is not always given by or expected from the wife ; and if an action were to put distinctly in issue the loss of such services, it might perhaps be shown in the most serious cases that there was really no loss at all. But it could not be reasonable that the wrongdoer should escape responsibility because the family he has wronged were in such circumstances, moved in such circles, or were subject to such claims by reason of public position or otherwise, that physical labor by the wife was neither expected nor desired. The word service has come to us in this connection from the times in which the action originated, and it implies whatever of aid, assistance, comfort and society the wife would be expected to render or to bestow upon her husband, under the circumstances and in the condition in which they may be placed, whatever those may be. That services in the ordinary sense were not rendered at all would be immaterial and irrevelant, except as the fact might, under some circumstances, tend to show a want of conjugal regard and affection, and thereby tend to mitigate the damages."—Cooley on Torts, p. 226. And to like effect is the language of the Supreme Court of Massachusetts : "A husband is not master of his wife, and can maintain no action for the loss of her services as his servant. His interest is expressed by the word *consortium*; the right to the conjugal fellowship of his wife, to her company, cooperation and aid in every conjugal relation. * * * * * A husband who is living apart from his wife, if

he has not renounced his marital rights, can maintain the action, and it is not necessary for him to prove alienation of the wife's affection or actual loss of her society and assistance."—*Bigaouette v. Paulet*, 134 Mass. 123 ; s. c. 45 Am. Rep. 307. Again it is said : "The damages allowed in suits for criminal conversation are penal rather than compensatory, for the plaintiff is entitled to substantial damages though he prove no resulting expense or loss of society or services."—9 Am. & Eng. Encyc. of Law, p. 835. And the theory that the injury wrought by the wrongdoer in such cases to the husband is an injury to his feelings, his comfort, his pride, his affections and to his conjugal rather than his property rights, and is to be measured by standards which take no account of the loss inflicted upon his estate by the deprivation of services to the results of which he is entitled, is illustrated and has been fully recognized by this court in *Garrison v. Burden*, 40 Ala. 513, where it is held that this is an action "for injuries to the person or reputation" of the plaintiff, and for that reason does not survive the death of the wrongdoer under section 2600 of the Code. The manifest purpose of the charges in question was, and their effect would have been, to confine the jury in their assessment of damages to a consideration of services as labor or assistance such as a servant might perform or render ; and they were, therefore, properly refused.

The foregoing considerations will serve also to indicate the ground of our conclusion that the fact that under present statutory provisions the wife is entitled to her own earnings is of no consequence in actions for criminal conversation.—*Cross v. Grant*, 62 N. H. 675 ; s. c. 13 Am. St. Rep. 607.

This action is transitory : place is not of the essence of it, need not be alleged, and if alleged, the averment is treated as formal merely, and it need not be proved.—1 Am. & Eng. Encyc. of Law, p. 184; 18 Am. & Eng. Encyc. of Law, p. 570 ; 1 Greenl. Ev., § 61 ; *Huckabee v. Shepherd*, 75 Ala. 342. Hence it is that, although the first count of the complaint avers that the wrongs of the defendant were committed in Jefferson county, evidence of their commission in Walker county or elsewhere would have supported the complaint, the averment of place being immaterial and not descriptive of the mate-

rial thing done ; and there being evidence of the commission of the alleged wrongs in Jefferson county, it was competent to show in connection therewith and in aggravation thereof that these wrongs were but the continuation of a liaison previously begun in Walker county. Charges 4 and 4½ were, we think, for these reasons well refused to the defendant.

The witness Root was a youth under twenty-one years of age. His credibility was sharply in issue before the jury. It was, we think, within the discretion of the trial court to allow the plaintiff to draw from him on cross-examination the fact that his father had been in the employment of the defendant's father, he having testified for the defense. The matter was before the court below upon the manner of the witness in a much fuller light than it could be presented here, and we are not prepared to say but that the fact thus adduced tended to show relations between the families of the witness and defendant, when taken in connection with the witness's demeanor on the stand, from which the jury might have inferred a bias on the witness's part in favor of the defendant. The matter was in the discretion of the city court.—*Miller v. Smith,* 112 Mass. 470 ; *Com. v. Lyden,* 113 Mass. 452 ; *Amos v. State,* 96 Ala. 120, 125 ; *Phoenix Ins. Co. v. Copeland,* 86 Ala. 551, 558.

We have discussed all the points insisted upon in the brief of appellant's counsel, and considered exceptions reserved but not treated in the brief. We find no error in the record, and the judgment must be affirmed.

COLEMAN, J., dissenting.—I do not concur in the conclusion of the majority of the court on one proposition. The general credibility of a witness may be impeached by showing his general bad character, or that his reputation for truth and veracity is not good. His credibility in the particular case may become questionable, by his manner on the stand, or by showing his interest in the issue, or a warm personal friendship, or sympathy or hostility to the parties, or to some party who may be affected by the result. To determine whether these relations or conditions exist great latitude is allowable on cross-examination in order to elicit facts which legitimately tend to prove their existance. When such facts are shown, the jury may properly consider them in.

[Glass v. Tisdale.]

connection with the evidence of the witness, in determining its weight and credibility. It is not the province of the jury to determine whether any fact is admissible for the purpose of showing these conditions or relations. This the court does, and then the jury weighs it.

The legal question presented by the case is, whether the fact that the father of the witness, at some former period of time, how long since is not known, was in the employ of the father of the defendant, is a fact from which a feeling of sympathy or hostility, so as to bias the testimony of the witness, as matter of law, may be inferred. It leads to the inquiry as to the relations exising between the father of the witness and the father of the defendant, whether friendly or unfriendly, and if so, to what extent, and whether they have been reconciled or not. Collateral issues are raised. Where is the limit to be fixed, if such a fact is relevant? To my mind it is palpably too remote and irrelevant for the purpose for which it was admitted.