(98 South. 809)

**WOODSON v. BAILEY.** (6 Div. 818.)

(Supreme Court of Alabama. Jan. 17, 1924.)

**1. Husband and wife** ⬅322—**Marital rights, loss of which constitutes loss of "consortium," stated.**

Loss by either husband or wife of rights to the person, affection, society, assistance, aid, fellowship, companionship, co-operation, or comfort of the other constitutes a loss of consortium.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Consortium.]

**2. Husband and wife** ⬅325—**Wife may sue for alienation of husband's affections.**

A wife may sue for the alienation of her husband's affections.

**3. Husband and wife** ⬅333(9)—**Essentials of case in action for alienation of affections or criminal conversation stated.**

In actions for criminal conversation or for the alienation of affections, an allegation and proof of marriage and proof of the act of adultery with one spouse by a person having knowledge of the marriage makes out the case of the injured spouse without further proof.

**4. Husband and wife** ⬅333(9) — **Proof of alienation of affections necessary where criminal conversation not established.**

In an action for alienation of affections where the element of criminal conversation is not involved, proof of the actual alienation of affections is necessary.

**5. Husband and wife** ⬅333(9) — **Proof of abandonment at instance of defendant held evidence of alienation of affections.**

Proof that a husband and wife were living happily and that another woman designedly came between them and caused the husband to abandon the wife is evidence that she has alienated his affections.

**6. Husband and wife** ⬅325—**"Malice" must appear to warrant recovery for alienation of affections.**

In wife's action for alienation of affections, to warrant recovery "malice," defined as the intentional doing of a wrongful act to the injury of another, must appear, but ill will or spite need not be shown.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice.]

**7. Husband and wife** ⬅325—**Defendant's conduct alienating plaintiff's husband's affections must have been intentional and designed.**

Wrongful conduct of defendant resulting in the alienation of plaintiff's husband's affections must have been "intentional" and "designed" to warrant recovery.

**8. Husband and wife** ⬅335—**Instruction precluding recovery if defendant was merely passive object of husband's affections held not erroneous.**

In an action by a wife for alienation of her husband's affections, an instruction that no re-

covery could be had if defendant "was merely the passive object" of the husband's affections *held* not erroneous, though the same would have been misleading in a case involving criminal conversation or elopement.

**9. Husband and wife ⊕═►335—Instruction that defendant must have been procuring and contributing cause of husband's abandonment of plaintiff held not erroneous.**

In an action by a wife for alienation of her husband's affections, an instruction barring recovery unless "defendant was the procuring or contributing cause of Mr. W.'s leaving his wife" *held* not erroneous, under the pleadings and evidence.

**10. Husband and wife ⊕═►325—Proof of actual physical separation of spouses unnecessary.**

In an action for alienation of plaintiff's husband's affections, a physical separation of the spouses need not be established, there being a loss of consortium where plaintiff has lost the conjugal affection, companionship, and assistance of her husband, though he still keeps up the form of family life.

Appeal from Circuit Court, Jefferson County; J. Q. Smith, Judge.

Action for damages by Mrs. M. W. Woodson for alienation of her husband's affections against Mamie Bailey. From a judgment for defendant, plaintiff appeals. Affirmed.

This is a suit by Mrs. M. W. Woodson against Miss Mamie Bailey to recover damages for the alleged alienation of the affections of Marshall Woodson, the plaintiff's husband.

The complaint is as follows:

"The plaintiff claims of the defendant the sum of ten thousand ($10,000.00) as damages for that heretofore, on to wit, the 25th day of July, 1913, the plaintiff and one Marshall Woodson were married and lived together as husband and wife until to wit, October, 1920; that on, to wit, the date last aforesaid, the plaintiff avers that the defendant wrongfully alienated the affections of her said husband, to wit, the said Marshall Woodson, and as a proximate consequence of said wrongful conduct on the part of said defendant, plaintiff avers that her said husband abandoned her; that she has been caused to lose her maintenance and support and the services and society of her said husband, and has been greatly humiliated, embarrassed, harassed and annoyed and made sick and sore, and caused to suffer great mental pain and anguish and will be caused to suffer great mental pain and anguish in the future; that her health and physical stamina has been greatly impaired, all to her damage in the sum aforesaid. Wherefore this suit and plaintiff claims punitive damages."

The plea was the general issue.

From a judgment for defendant, based on a jury's verdict, this appeal is taken.

Briefly summarized, plaintiff's testimony recounted several occasions when she had seen defendant on the streets of Birmingham in the company of plaintiff's husband; the gift of a box of candy to defendant by plaintiff's husband; the possession of a photograph of defendant and Marshall Woodson taken together; an admission by defendant that since Woodson had left Birmingham she had sent him money; some extracts copied from letters written to defendant by Woodson, since he left Birmingham, which contained endearing terms. Plaintiff further testified that her husband supported her and that her home life was happy "until he started to going with Miss Bailey"; that he first left her May 27, 1920; that she had him arrested in the juvenile court in July, and that he then came back and lived with her until he left for the West; that he has not supported her since he left her in October, 1920.

Defendant, who is employed in a piano store, testified that Mr. Woodson, who was an insurance salesman, was introduced to her in her place of employment by the manager of the piano company and that she took insurance with him at a later time; that his continuing to come to the store annoyed her; that she tried to avoid him; that she "asked the manager if he would please ask him to stay away"; that her meetings with Mr. Woodson had always been in daytime and never alone; that he had never given her any candy and that the only money she ever sent him since he left Birmingham was some that had been left by him on deposit with her employer. She further stated that she had received a number of letters from plaintiff's husband since his departure from Birmingham, and most of them were never opened.

The sales manager of the piano company, M. Ringleburg, corroborates defendant's testimony that she tried to avoid plaintiff's husband and that the money sent him after he left Birmingham had been left with the company on deposit. He further testified:

"I know that Miss Bailey is a modest, retiring girl, as I have observed her conduct for about four years."

R. G. Galloway, a salesman of the company, testified:

"They [Miss Bailey and Mr. Woodson] appeared to me as being only ordinary acquaintances and nothing more. Miss Bailey asked me to request Mr. Woodson to stay away from the store."

There is no suggestion, either in allegation or proof, of criminal conversation between defendant and plaintiff's husband.

Five written charges, given at the request of the defendant, present the questions for review by this court. These charges are as follows:

(1) "I charge you, gentlemen of the jury, that if you believe from the evidence that Miss

Bailey was merely the passive object of Mr. Woodson's affections you cannot find for the plaintiff."

(2) "I charge you, gentlemen of the jury, that unless you believe from the evidence that defendant intentionally and designedly alienated the affections of Mr. Woodson you cannot find for the plaintiff."

(3) "I charge you, gentlemen of the jury, that unless you believe from the evidence that there was an intent upon the defendant's part to alienate Mr. Woodson's affections, you cannot find for the plaintiff."

(4) "I charge you, gentlemen of the jury, that unless you believe from the evidence that the defendant was the procuring or contributing cause of Mr. Woodson's leaving his wife, you cannot find for the plaintiff."

(5) "I charge you gentlemen that, unless you believe from the evidence that the defendant maliciously alienated the affections of Mr. Woodson you cannot find for the plaintiff."

Horace C. Wilkinson and C. W. Greer, both of Birmingham, for appellant.

Charge 1 was erroneously given for defendant. Miller v. Pearce, 86 Vt. 322, 85 Atl. 620, 43 L. R. A. (N. S.) 332. It is not necessary, in a case of this kind, that the affections of plaintiff's spouse be entirely alienated before a right of action accrues. Charges 2 and 3 were erroneous. Fratini v. Caslini, 66 Vt. 273, 29 Atl. 252, 44 Am. St. Rep. 843; Nichols v. Nichols, 147 Mo. 387, 48 S. W. 947; Prettyman v. Williamson, 1 Pennewill (Del.) 224, 39 Atl. 371. The gist of the action is loss of consortium. 21 Cyc. 1619; Neville v. Gile, 174 Mass. 305, 54 N. E. 841; Rott v. Goehring, 33 N. D. 413, 157 N. W. 294, L. R. A. 1916E, 1086, Ann. Cas. 1918A, 643; Parker v. Newman, 200 Ala. 103, 75 South. 479. It is not necessary that malice be proven. Zimmerman v. Whiteley, 134 Mich. 39, 95 N. W. 989; Westlake v. Westlake, 34 Ohio St. 621, 32 Am. Rep. 397; Trumbull v. Trumbull, 71 Neb. 186, 98 N. W. 683, 8 Ann. Cas. 812; Brown v. Brown, 124 N. C. 19, 32 S. E. 320, 70 Am. St. Rep. 574; Hutchenson v. Peck, 5 Johns. (N. Y.) 196; Williams v. Williams, 20 Colo. 51, 37 Pac. 614; Nevins v. Nevins, 68 Kan. 410, 75 Pac. 492; Waldron v. Waldron (C. C.) 45 Fed. 315.

James H. Willis, of Birmingham, for appellee.

Unless there was design and intent on the part of defendant, there was no wrong upon her part. 2 Schouler, Dom. Rel. (6th Ed.) 1587; 13 R. C. L. 1466. Unless defendant was responsible for the husband's abandonment of plaintiff, she cannot be held liable. 2 Schouler, 1588; 13 R. C. L. 1464. Malice, in legal sense, means a wrongful act, done intentionally, without just cause. Zimmerman v. Whiteley, 134 Mich. 39, 95 N. W. 989.

BOULDIN, J. [1] The injury sought to be redressed in this form of action is loss of consortium.

In the civil law the term consortium signified a lawful Roman marriage. Black's Law Dict. "Consortium."

In the early common law it was limited to the rights of the husband growing out of the marriage relation. In modern law it has come to denote the rights of either consort, and may be said to include those collective rights of either husand or wife resulting from and inherent in the marital union. These rights have been defined in this form of action to include the person, affection, society, and assistance. The terms "service," "aid," "fellowship," "companionship," "company," "co-operation," and "comfort" have also been employed in defining those mutual and special rights growing out of the marriage covenant. The loss of consortium is the loss of any or all these rights. 12 C. J. 532; 30 C. J. 1123, § 977; 2 Words & Phrases, First Series, 1453; 13 R. C. L. 507.

[2] In Parker v. Newman, 200 Ala. 103, 75 South. 479, the right of the wife to sue for the alienation of the affections of the husband was fully considered and declared to be the law of Alabama. We reaffirm that case, and no further discussion on that point is called for. That case involved the element of criminal conversation.

The former case of Long v. Booe, 106 Ala. 570, 17 South. 716, may be more aptly considered an action of criminal conversation. Carnal knowledge of the wife was the basis of the action, and alienation of affections averred as a consequent injury, and in aggravation of the damages.

[3] The action for alienation of affections is the more inclusive—may charge adulterous connection as one of the injuries suffered by plaintiff in connection with other elements of loss of consortium. It is held that in either form of action averment and proof of marriage and the act of adultery with one spouse by a person having knowledge of the marriage makes out the case of the injured spouse. In such case there is by the very act an invasion of the most sacred of conjugal relations, the defilement of the marriage bed. Malice inheres in such wrongful act. Miller v. Pearce, 86 Vt. 322, 85 Atl. 620, 43 L. R. A. (N. S.) 332; 13 R. C. L. 1466, 1467, § 515. Hence, it is declared in both our Alabama cases above that where criminal conversation is shown there need be no other or further proof of alienation of affections. Whether this rule should apply to all such cases we need not now inquire.

[4] We do not understand these cases to hold that no proof of alienation of affections is required in this form of action where no element of criminal conversation is involved. In the case at bar the averment is that defendant wrongfully alienated the affections of plaintiff's husband and that, as a proximate consequence of said wrongful conduct on the part of defendant, plaintiff's husband abandoned her, etc.

It would be an anomaly in jurisprudence to hold no proof is required of this basic averment of the complaint. There was no error in the instructions of the trial court to the effect that no recovery can be had unless the defendant alienated Mr. Woodson's affections. 13 R. C. L. 1464, § 513; 30 C. J. p. 1124, § 981; Curtis v. Miller, 269 Pa. 509, 112 Atl. 747; Smith v. Rice, 178 Iowa, 673, 160 N. W. 6; Servis v. Servis, 172 N. Y. 438, 65 N. E. 270; Powell v. Benthall, 136 N. C. 145, 48 S. E. 598.

[5] The manner of proof is a different question. If a husband and wife are living happily in their home life, and another woman designedly comes between them and causes the husband to abandon the wife, this is evidence that she has alienated his affections.

[6] The court further instructed the jury, in effect, that malice was necessary to a recovery. Malice in law is frequently defined to be the intentional doing of a wrongful act to the injury of another. True, in this action no ill will or spite toward the wife need be shown. The wrongful conduct may arise from an improper affection entertained by one woman for another woman's husband; from love of admiration and conquest; or from mere love of adventure which takes no thought of the wrong inflicted upon another. The rule obtains here as elsewhere that one must be taken to intend the natural consequences of his or her acts.

Many cases have held that where complaint is directed against a parent or guardian, who has a natural interest in and care for the child or ward, more direct proof of malicious intent is required than where a separation is caused by a stranger.

We think the weight of authority, as well as reason, supports the view that in this action malice as above defined must appear in all cases. 30 C. J. p. 1122, § 974; Geromini v. Brunelle, 214 Mass. 492, 102 N. E. 67, 46 L. R. A. (N. S.) 465; Hodge v. Brooks, 153 Ark. 222, 240 S. W. 2; Warren v. Graham, 174 Iowa, 162, 169, 156 N. W. 323; 13 R. C. J. pp. 1466, 1467, § 515; Boland v. Stanley, 88 Ark. 562, 115 S. W. 163, 129 Am. St. Rep. 114; notes, 44 Am. St. Rep. 850; 46 Am. St. Rep. 475; 46 L. R. A. (N. S.) 465; Ann. Cas. 1912C, 1180; 2 Schouler, Domestic Relations (6th Ed.) § 1335.

[7] The same reasons, supported by the above authorities, fully sustain the charges given by the court below to the effect that the wrongful conduct resulting in the alienation of the husband's affections must be "intentional" and "designed."

[8] The court further charged the jury that no recovery could be had if the defendant "was merely the passive object" of the husband's affections.

"Since the acts of defendant must be the procuring cause of the alienation or enticement, the general rule is that a person is not liable to whom a spouse voluntarily, without wrongful inducement, gives his or her affections." 30 C. J. p. 1125, § 983; De Ford v. Johnson, 152 Mo. App. 209, 133 S. W. 393; Nieberg v. Cohen, 88 Vt. 281, 92 Atl. 214, L. R. A. 1915C, 483, Ann. Cas. 1916C, 476.

"Nor can a woman be chargeable with alienating the affections of another woman's husband simply because he has become enamored of her." 13 R. C. L. p. 1465, § 513; note, 46 Am. St. Rep. 476.

The expression "passive object of affections" would be misleading in cases of criminal conversation or elopement. The mere passive submission to the embraces of the husband, or to being carried away under his dominating will, would imply an entering of defendant's will into a copartnership of wrongdoing. In the case at bar no elements of this kind enter into the issue before the jury. A careful study of the tendencies of the evidence shows little, if any, direct evidence of an encouragement of the plaintiff's husband in his infatuation. It may be said that any intentional and wrongful conduct on the part of Miss Bailey would have to be inferred from circumstances in which the husband was apparently the actor.

It is difficult to state in a mere phrase the conditions of liability in such cases. We do not think the words used in this charge would carry to a jury the idea of an intentional, quiescent encouragement of an infatuated husband. The courts seek to so administer the law as to protect, as far as may be, all those marital rights held sacred in our institutions. At the same time we should safeguard the personal right of every man or woman to a full social and business contact. To be friendly is a virtue, not a fault. To be attractive and pleasing is a natural right, we may say a primal instinct, of woman.

When confronted with a growing evidence that a married man is unduly interested, a young woman may find herself in a difficult place. A wish not to offend, to avoid a possible scene, even a sense of sympathy often invoked by the man, may impel her to remain passive, and not give him that sort of rebuff which he deserves. The safer rule of law, in the interest of justice to all concerned, is that she shall not by word or act, however veiled, intentionally and designedly alienate the husband's affections from his wife.

[9] It remains to consider the instruction given to the jury that no recovery could be had in the case at bar unless the "defendant was the procuring or contributing cause of Mr. Woodson's leaving his wife." This instruction is in the form often approved by the authorities where the loss of consortium complained of is abandonment. 13 R. C. L. p. 1469, § 519; 30 C. J. p. 1124, § 981, and page 1125, § 982, and notes.

[10] "An actual physical separation of the spouses is not essential to the right of action." 30 C. J. p. 1123, § 979; Rott v. Goehring, 33 N. D. 413, 420, 157 N. W. 294, L. R. A. 1916E, 1086, Ann. Cas. 1918A, 643; 13 R. C. L. pp. 1467, 1468, § 517; Foot v. Card, 58 Conn. 1, 18 Atl. 1027, 6 L. R. A. 829, 18 Am. St. Rep. 258. The spirit of this rule has been adopted in our own cases of Parker v. Newman, 200 Ala. 103, 75 South. 479, and Long v. Booe, 106 Ala. 570, 17 South. 716.

In the latter case the court, discussing the term "services" as an element of consortium, declares it to mean more than the mere labor of a servant, and quotes approvingly from Judge Cooley, saying, "It implies whatever aid, assistance, comfort and society the wife would be expected to render to or bestow upon the husband." Again (quoting another case), "the right to the conjugal fellowship of his wife, to her company, cooperation, and aid in every conjugal relation."

Whether there be criminal conversation, a complete separation, or the loss of conjugal affection, companionship and assistance, while the husband still keeps up the form of family life, in either case, there is a loss of consortium. Marriage ceases to be a union, and becomes a bondage.

In the case at bar the complaint avers a complete abandonment; the evidence without dispute sustains this averment; the verdict of the jury acquits the defendant of all legal responsibility therefor.

The question is, whether, under the pleadings and proof, there was an issue for the jury for actionable injury if defendant was not the procuring or contributing cause of the husband's leaving the wife. The complaint avers that the husband and wife lived together until October, 1920:

"That on to-wit, the *date last aforesaid* * * * defendant wrongfully alienated the affections of her said husband * * * and as a proximate consequence * * * said husband abandoned her." (Italics supplied).

After careful study we have concluded that the complaint counts on the alienation of affections on the occasion of the separation, October, 1920. The injury complained of must likewise be limited to the loss of consortium from and after the separation. The complaint negatives any alienation of affections prior to the date named, to wit, when they ceased to live together by reason of abandonment. The evidence of any break in the relations between the husband and wife prior to October, 1920, must be treated as in support of the charge that the affections were alienated on that occasion.

It seems correct, therefore, to say that, if defendant was not the procuring or contributing cause of the separation, she could not be responsible for the loss of consortium charged in the complaint.

We find no reversible error in the several instructions given.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.