JENNIE M. OPPENHEIM, Respondent, v. MARTHA KRIDEL, Appellant.

First Department, January 26, 1923.

Criminal conversation — wife cannot maintain action for criminal con-
versation — Domestic Relations Law, § 57, and General Construction
Law, § 37-a, do not authorize action.

A wife cannot maintain an action against another woman for criminal conversation
with her husband, and section 57 of the Domestic Relations Law and section 37-a
of the General Construction Law when read together do not authorize the
maintenance of such an action.

MERRELL, J., dissents, with opinion.

APPEAL by the defendant, Martha Kridel, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the
office of the clerk of the county of New York on the 2d day of July,
1921, upon the verdict of a jury for $40,000 (reduced to $20,000);
also from an order entered in said clerk's office on the 26th day of
April, 1921, denying defendant's motion for a new trial made upon
the minutes, and also from an order entered in said clerk's office on
the 27th day of June, 1921, denying defendant's motion to resettle
the first mentioned order.

*Brodek & Raphael* [*Charles A. Brodek* of counsel], for the appellant.

*O'Gorman, Battle, Vandiver & Levy* [*Isaac H. Levy* of counsel;
*George Gordon Battle* with him on the brief], for the respondent.

PAGE, J.:

I am of the opinion that the plaintiff cannot maintain this action
to recover damages for criminal conversation between the defend-
ant and plaintiff's husband. Upon the trial it was held that the
complaint stated two causes of action, although not separately
stated, one for alienation of affection, and the other for criminal
conversation.

The court dismissed the alleged cause of action for alienation
of affection, because it appeared that the plaintiff and her husband
had not lived together or cohabited as husband and wife for several
years prior to the alleged act of adulterous intercourse between
the defendant and plaintiff's husband, and submitted the cause
to the jury as one for damages for criminal conversation. By
reason of the fact that the complaint was held to state two causes
of action, a large amount of immaterial evidence, highly prejudicial
to the defendant, was received, and the jury were not properly
instructed as to the measure of damages.

The complaint stated only a single cause of action to recover

damages for criminal conversation. The allegations of alienation of affection and deprivation of the comfort, society, aid, assistance and support of her husband are alleged in the complaint to have been the result of the criminal conversation, for those allegations are connected with and alleged to be the result of the fact set forth in preceding allegations by the use of the phrase, " by means whereof," which makes the following allegations a part of the same sentence with that which precedes. Allegations of alienation of affection and loss of consortium and support are appropriate in a complaint for criminal conversation, in aggravation of damages. (*Currie* v. *Gardenier*, 59 App. Div. 319; *Bigaouette* v. *Paulet*, 134 Mass. 123, 125.)

It was well settled at common law that a wife could not maintain an action against a third person for enticing away her husband, alienating his affections, or criminal conversation with him. After the passage of the acts authorizing a married woman to hold property and contract as a *feme sole* and to maintain a tort action in her own name for an injury to her person or character (Laws of 1848, chap. 200; Laws of 1849, chap. 375; Laws of 1860, chap. 90; Laws of 1862, chap. 172), there was a diversity of opinion, whether the wife could maintain an action against a third person for alienating the affection of her husband and thereby depriving her of his society and support. (*Cf. Van Arnam* v. *Ayers*, 67 Barb. 544; *Jaynes* v. *Jaynes*, 39 Hun, 40.) In *Bennett* v. *Bennett* (116 N. Y. 584) it was held that, notwithstanding the repeal of the sections of the acts of 1860 and 1862 (*supra*), which were regarded applicable (Laws of 1880, chap. 245, § 1, subds. 36, 38), an action for alienation of the affections of her husband could be maintained by a wife by virtue of section 450 of the Code of Civil Procedure,* which gave a married woman capacity to sue as if she were single. That case is cited by Mr. Justice Merrell as an authority for the maintenance of an action by the wife for criminal conversation. In my opinion it is not. The reasoning of the opinion in that case was that the rights of the husband and wife to the affection, society and aid of the other are mutual rights and obligations that arise from the marriage contract, which attach to the husband as husband and to the wife as wife; that any interference with those rights, whether of the husband or the wife, is a violation not only of a natural right, but also of a legal right arising out of the marriage relation; that this constituted an actionable injury for which, at common law, the husband could recover damages, but the wife could not, for she did not have legal capacity to sue; an action to recover for her personal injuries would have to be maintained

---

* See Civ. Prac. Act, § 200; Jus. Ct. Act, § 28.— [Rep.

by the husband and wife jointly, but the damages, if collected, belonged to the husband. If, however, she survived her husband and the damages had not been collected and reduced to possession, they survived to the wife, and did not pass to his estate. Therefore, the wife had a right of action for any actionable injury, at common law, but she could not set the law in motion unless her husband joined. " When the Legislature provided that she could sue in her own name, without this inconvenient formality, it cut off the right of the husband and permitted her to prosecute and recover for herself."

The right of a wife to maintain an action for the alienation of her husband's affections is no longer questioned in this State. (*Cochran* v. *Cochran*, 196 N. Y. 86, 89.) But the right of the wife to sue her husband's paramour for criminal conversation has never been recognized in this State. So far as I have been able to discover, this is the first case in this State in which a verdict has been returned in favor of a plaintiff in an action by the wife against another woman merely because of her having carnal intercourse with plaintiff's husband. *Hodecker* v. *Strickler* (39 N. Y. Supp. 515) was an action in equity for injunctive relief and damages. On demurrer it was held that the plaintiff, a married woman, had no cause of action against the defendant merely because the defendant lived in meretricious relations with the plaintiff's husband, assuming to bear his surname; the action not being founded on any charge of libel or slander, or that defendant had alienated from the plaintiff the affections of the husband, and there being no allegation that the plaintiff still lived with him or that her cohabitation with him was discontinued for any cause attributable to the defendant. In the course of the opinion the court said: " It is said by counsel that equity will not suffer a wrong without a remedy. This maxim has its limitation in another known as *damnum absque injuria*, and, further, that obligations, rights and duties merely moral are not the subject of equitable relief; " and in conclusion: " The matters alleged in the complaint present moral questions for consideration only in the tribunal of conscience. My examination of the case leads me to the conclusion that the facts alleged in the complaint do not support a cause of action."

The plaintiff in the *Hodecker Case* (*supra*) in some particulars amended her complaint, but not in such a way as to meet the adverse criticism to which the first was subjected. On appeal from the interlocutory judgment entered upon a demurrer, the court said: " Upon the first decision a very careful and comprehensive opinion was written by Mr. Justice BRADLEY (39 N. Y. Supp. 515), which commends itself to our unqualified approval." (*Hodecker* v. *Strickler*,

20 App. Div. 245, 246.) The right of the wife to recover from the paramour for marital infidelity alone, on the theory that by reason of the defendant's wrongful influence and inducements she suffered loss of consortium, has been considered in several cases brought for alienation of affection. In *Kuhn* v. *Hemmann* (43 App. Div. 108, 111) this court said: " Mere marital infidelity would not suffice to maintain such an action, for marital infidelity alone did not cause the wrongs of which the plaintiff is now complaining. There is no evidence whatever to show that she was, in any way, deprived of the ' comfort, society, aid, assistance, affection, support and maintenance ' of her husband up to the time when she left for Europe. It is true that he was then, and had been for some time previous thereto, maintaining a mistress with whom he passed a portion of his time. But of this the plaintiff was in complete ignorance. He still continued to live with and support her, and he ostensibly fulfilled all his marital relations. It is clear, then, that there was, up to this time, no such alienation of affections as would have entitled the plaintiff to maintain an action like the present against these defendants [citations]. Thus, the only injury which plaintiff suffered up to the time of her departure for Europe, was the moral injury resulting from the violation by her husband of his marital allegiance." In *Buchanan* v. *Foster* (23 App. Div. 542, 544) this court said: " The mere fact that the husband maintains improper relations with the defendant and remains away from his family does not seem to be sufficient to support the action; there must be some active interference upon the part of the defendant. The fact that a woman is attractive and submissive is not sufficient. There must be some evidence from which the conclusion can be drawn that she was the pursuer and not merely the pursued."

That a wife cannot maintain an action for criminal conversation, in this State, is so well settled that the Legislature in dealing with the competence of witnesses provided in section 831 of the Code of Civil Procedure (Civ. Prac. Act, § 349): " In an action for criminal conversation, the plaintiff's wife is not a competent witness for the plaintiff, but she is a competent witness for the defendant, as to any matter in controversy; except that she cannot, without the plaintiff's consent, disclose any confidential communication had or made between herself and the plaintiff." (See *Strock* v. *Russell*, 148 App. Div. 483, 485.)

The reason for this differentiation between the two actions rests in the fundamental fact that, in one case, there was a personal injury which could not be redressed because of disability of the party to sue, and in the other there was no actionable injury.

When a question arises as to the elements of a common-law action, a reference to the form of pleadings in such an action is illuminating, for as ASHURST, J., said: "The forms of pleading are evidence of the law." (*Weedon* v. *Timbrell*, 5 T. R. 357.) In an action for criminal conversation the correct practice was to declare it trespass *vi et armis* and *contra pacem*. (1 Chit. Pl. [16th Am. ed.] *150.) And this was proper even where the wife had consented, for the act of adultery was regarded as an actual trespass upon the marital rights of the husband, although the consequent injury is really to the husband on account of the corruption of the body and mind of the wife, and it was in the view that it was a trespass upon the rights of the husband that it was held that the wife was incapable of giving a consent to an injury to her husband.. (*Rigaut* v. *Gallisard*, 7 Mod. Rep. 81.) In view of the common law, the husband had a property right in the body of his wife and a right to the personal enjoyment of his wife. For an invasion of this right the law permitted him to sue as husband. (*McClure's Executors* v. *Miller*, 11 N. C. [4 Hawks] 133, 140, n.) It was on the ground that an action for criminal conversation was to recover for damages sustained to the person and property of the husband that the Supreme Court of the United States affirmed the courts of this State in refusing to discharge the judgment therein because of the defendant's discharge in bankruptcy, holding that the cause of action for damage for assault constitutes a willful and malicious injury to the husband's rights and property within the meaning of the Bankruptcy Act of 1898 (30 U. S. Stat. at Large, 550, § 17, subd. 2).* (*Tinker* v. *Colwell*, 193 U. S. 473, affg. *sub nom. Colwell* v. *Tinker*, 169 N. Y. 531, affg: 65 App. Div. 20.) In a somewhat recent case (1895) the Supreme Court of Minnesota, in sustaining a demurrer to a complaint in criminal conversation, said: "We are quite safe in saying that at common law no such action could have been maintained.. The injured husband alone brought crim. con., and he could sustain the action by simply showing adulterous intercourse. The grounds on which the right to recover was based are well stated in Cooley on Torts, 224, and the principal elements were the disgrace which attached to the plaintiff as the husband of the unfaithful wife, and no such disgrace ever rested upon the wife if there was one, of the guilty defendant, and, of more importance, the danger that a wife's infidelity might not only impose on her husband the support of children not his own, but, still worse, cast discredit upon the legitimacy of those really begotten

---

* Since amd. by 32 U. S. Stat. at Large, 798, § 5, and 39 id. 999, chap. 153.— [REP.

by him. Because of these elements, the man was always presumed to be the guilty party. In the eye of the law, the female could not give her consent to the adulterous acts, and, as a result, it was no defense in this form of action that the defendant had been enticed into criminal conversation through the acts and practices of the woman. From this statement as to the grounds or elements constituting this action, it will be seen that the principal ones can not possibly exist or be invoked in a similar action brought by a wife. And what has been said about the unavailability of the defense that the defendant himself was the victim, and not the seducer, is suggestive of what the courts might have to hold to be the rule of pleading, and what they might have to inquire into, upon the trial of an action of this kind. Would it be held, following the old rule we have mentioned, and for which the reason seems well founded, that it was no defense for the female sued to allege and prove that she was the party seduced, and that the greater wrong and injury had been inflicted upon her, not upon the plaintiff wife? or would the contrary rule prevail? But we need not consider the subject further, for a moment's reflection will suggest the remarkable results flowing from the adoption of either rule. * * * We find nothing in our statutes in respect to the rights of married women which indicates that the power to proceed in this form of action was intended to be conferred." (*Kroessin* v. *Keller*, 60 Minn. 372, 374, 376.)

Without multiplying citations, it is well settled that at common law the wife had no property right in the person of her husband nor in his earnings. If by negligent or malicious act he suffered injury to his person, or his earning capacity was impaired, she had, and now has, no right of action against the wrongdoer, although she may have suffered substantial injury in the loss of his ability to support her. Her right was to his affection, society, aid and support, and if any one by enticing him away, or poisoning his mind against her, alienated his affection, it was an actionable wrong which for procedural reasons she could not enforce. On the other hand, the common law recognized in the husband the right to the body of his wife and the exclusive enjoyment of his marital rights and to beget his own children, and against any one who invaded that right he had a right of action for criminal conversation, a right that the wife never had. The question remains, has she been given that right by virtue of section 57 of the Domestic Relations Law and section 450 of the Code of Civil Procedure?

Under the Married Woman's Acts of 1860 and 1862 (*ubi supra*) it was held that for those injuries to the wife for which the husband

and wife could sue jointly, she could sue alone, and that the recovery was for the benefit of her personal estate; but for those injuries to her for which the husband had the sole right of action she could not sue, the reason being that those acts did not enlarge the rights of the wife or detract from the rights of the husband. For a direct injury to her person or property, or if she was carrying on any trade or business or performing any work, labor or services on her sole and separate account, she could recover the consequential damages for what she lost in that behalf by reason of the injury. But if she was not engaged in a separate business or employment, the services of the wife in the household in discharge of her domestic duties still belonged to the husband, and in rendering such services she still bears to him the common-law relation, and for the consequential damage for the loss of such services he, and not she, can recover from the wrongdoer. (*Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47, 56; *Brooks* v. *Schwerin*, 54 id. 343, 348.) The husband's right to his wife's services was not limited to those performed for him in his house, for when she worked for him upon his farm she was entitled to no pecuniary compensation and his promise to pay her therefor was without consideration (*Whitaker* v. *Whitaker*, 52 N. Y. 368, 371), and the statutes did not apply to labor performed by her for him in his household, even if it was of somewhat extraordinary character (*Reynolds* v. *Robinson*, 64 N. Y. 589; *Coleman* v. *Burr*, 93 id. 17), nor when she works with her husband for another and their joint earnings are used to support the family; if there is no special contract that she is to receive the avails of her labor, they belong to him and he is entitled to receive their value. (*Birkbeck* v. *Ackroyd*, 74 N. Y. 356.) Until the passage of chapter 381 of the Laws of 1884, the power of a married woman to make a general contract not relating to labor to be performed on her sole and separate account depended upon the act of 1860, and her having a separate estate or engagement in a separate business was essential to their validity. (*Linderman* v. *Farquharson*, 101 N. Y. 434.) But this act did not apply to any contract between herself and husband except in relation to her separate estate. (*Noel* v. *Kinney*, 106 N. Y. 74, 78.) By chapter 537 of the Laws of 1887 she was authorized to convey lands directly to and accept conveyance from her husband without the intervention of a third person. In *Fitzgerald* v. *Quann* (109 N. Y. 441, 445), an action brought against husband and wife to recover damages for slanderous words spoken by the wife, it was claimed that the common-law liability of a husband for the torts of his wife had been abrogated by the provisions of chapter 172 of the Laws of 1862, under which a married woman

could be sued as if she were single and judgment enforced against her separate estate. It was held that the common-law liability of the husband was unaffected by the statute which merely related to the status of a married woman in court, and the cases enumerated therein in which she could be so sued did not include a case of a tort committed by her during coverture for which an action is brought during coverture. The court therein used this language, which is particularly applicable to the instant case: "The counsel for the defendant in his argument before us, conceded the rule to be well established and almost universally acted on, that statutes changing the common law must be strictly construed, and that the common law must be held no further abrogated than the clear import of the language used in the statutes absolutely requires. However much modern judges might sometimes be inclined to doubt the beneficial results to be derived from an always strict adherence to the rule, grounded upon some possible doubts of the high order of excellence in all cases of the common law, or of its being without exception the perfection of human reasoning in any other than a very narrow, technical and one-sided way, yet the rule itself is too securely and firmly established and grounded in our jurisprudence to be altered other than by legislative interference. This court acted upon such rule in the late case of *Bertles* v. *Nunan* (92 N. Y. 152), and because there was no statute which plainly altered it, the common law was held in that case to remain the law in this State in regard to the conveyance of real estate to a husband and wife jointly, and that upon the death of either the survivor took the whole estate." In 1890 an act was passed exempting the husband from liability for his wife's torts (Laws of 1890, chap. 51, § 2), which was in effect incorporated in section 27 of the Domestic Relations Law of 1896, and the latter reincorporated in section 57 of the present Domestic Relations Law.

Mr. Justice MERRELL is of the opinion that section 57 of the Domestic Relations Law, read in connection with section 37-a of the General Construction Law (as added by Laws of 1920, chap. 917, formerly Code Civ. Proc. § 3343, subd. 9), not only removes every obstacle which existed at common law preventing the wife from seeking redress for personal injury suffered by her, but by defining personal injuries to include criminal conversation has created a right of action in her to sue another woman for criminal conversation with her husband. In *Colwell* v. *Tinker* (169 N. Y. 531, 535, 536) the court said: "Section 3343 of the Code, subdivision 9, defines a 'personal injury' to be, among other things, criminal conversation. As this is a mere legislative definition of a personal injury, for the guidance of the courts in

this State, it may be regarded for the purposes of this discussion as of no binding force in the determination of the Federal question now presented. It is very clear upon principle and authority that criminal conversation is a wilful and malicious injury to both the person and the property of the husband. * * * On principle, criminal conversation with the wife is a personal injury to the husband, without regard to the statutory declarations to that effect in this State. While loss of service is usually pleaded in this form of action, yet its real foundation is the personal injury inflicted upon the husband. The offense charged is a most grievous wrong against social order and society; it strikes at the foundations of the home and the legitimacy of offspring."

As we have hereinbefore shown, when this case was taken to the United States Supreme Court by writ of error, that court (193 U. S. 473), upon common-law grounds, found that "an assault of this nature may properly be described as an injury to the personal rights and property of the husband, which is both malicious and willful."

In my opinion the inclusion, in the definition of "personal injury," of "criminal conversation," a well-known personal injury to a husband and not to the wife, gives her no more right of action than does the inclusion therein of "assault, battery, false imprisonment" give a right of action to the wife when the object of the assault, battery or false imprisonment was the husband, on the ground that thereby the wife's support and maintenance had been diminished. The object of these definitions is not to create new actions but merely to classify and define those that already exist. Nor does the phrase "injury arising out of the marital relation," in section 57 of the Domestic Relations Law, create a new action, but merely removes the disability of coverture that existed before to recover for such wrongs. For the alienation of affection; for breach of a covenant in a marriage settlement, which could only be enforced by a decree of specific performance in equity; for breach of an agreement for separate maintenance and support, which could only be enforced when entered into by a third party and by that party enforced; and where a wife has furnished, from her separate estate, money to buy necessaries for herself and children, especially where he has deserted them and has been adjudged liable to her for a stated sum for support (*De Brauwere* v. *De Brauwere*, 144 App. Div. 521; affd., 203 N. Y. 460), these being certain existing rights of action to which the statute applies, it will be presumed that the legislation was intended to apply thereto, and not to create new causes of action unless the intention to do so appears clearly from the language used.

From this review of the authorities, in my opinion, it is clearly

demonstrated that, except as expressly changed by the clear wording of a statute, the relations of husband and wife, the rights, duties and obligations of the parties to the marriage contract, are imposed, governed and limited by the principles of the common law; that the courts will not by judicial legislation create new rights, duties or causes of action, in derogation of the common law, but will leave to the law-making branch of the government the exercise of that power.

In passing we might observe that the action for criminal conversation has been abolished in England by The Matrimonial Causes Act, 1857. (20 & 21 Vict. chap. 85, § 59.) It is an action that was never favored by the courts and instead of extending it to cover new causes it might be wise to abolish the action.

The denial of this particular right of action does not leave an injured wife remediless. She can obtain a divorce with provision for her support and maintenance; and if her husband is enticed away from her and his affections alienated, she can recover damages which would be increased by the adulterous acts.

The judgment and order should be reversed, with costs, the verdict set aside, and judgment directed for the defendant dismissing the complaint upon the merits, with costs to appellant.

CLARKE, P. J., DOWLING and SMITH, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting):

The action was brought to recover damages for alienation of the affections of plaintiff's husband by the defendant, and also to recover damages for criminal conversation. It having appeared upon the trial to the satisfaction of the presiding justice that the plaintiff and her husband had not lived or cohabited together as husband and wife for some years prior to the alleged sexual intercourse between the defendant and plaintiff's husband, the court instructed the jury that the plaintiff could not recover against the defendant for alienation of her husband's affections, but that if the jury deemed the evidence sufficient there might be a recovery on the part of the plaintiff for damages against the defendant for criminal conversation between the defendant and plaintiff's husband. The jury at the trial rendered a verdict in plaintiff's favor for $40,000, which, upon motion to set aside as excessive, was reduced by the trial court to $20,000, upon which the judgment appealed from was entered.

The sole question involved upon this appeal is as to whether or not a wife may maintain an action against her husband's paramour for criminal conversation.

It is the contention of the defendant, appellant, that such action does not lie at common law, the appellant contending that the gist and foundation of such an action is the injury suffered by the husband because of the infidelity of his wife in that the husband may be called upon to support the offspring of other men, and that doubt may be cast upon the legitimacy of the offspring of the marriage between his wife and himself. Unquestionably the question of legitimacy of offspring is an important element as the basis of an action for criminal conversation, but it is not the only basis of such action, whether the seduction is of the plaintiff's wife or husband, as the injury to the feelings and mental anguish suffered by the wronged party constitutes a sufficient basis for the allowance of damages.

Counsel for the appellant cites no case in this State since the passage of the various statutes granting married women the same rights of action as though they were unmarried where the courts have held that an action to recover damages for criminal conversation could not be maintained by the wife. In some of the States the courts have so held, while, I think, in a majority of the States the courts have inclined to an opposite view. In 8 American and English Encyclopædia of Law (2d ed. p. 261) it is said:

" As regards the husband, from time immemorial the law has given him a right of action for damages against the seducer of his wife.

" But as regards the wife, though in natural justice no reason exists why her right to maintain an action against the seductress of her husband should not be coextensive with his right of action against her seducer, yet the common law has never seen fit to accord to her the redress which it affords him.

" The reason of this distinction must, it seems, be discovered not in any principle of abstract right, but in the subservient relation which the wife occupied at the common law. The husband had a property in the wife's services, and it is upon the loss of these that his right of recovery was formerly placed; but the wife had no property in the services of her husband and so could maintain no action. Moreover, at common law, in order for her to bring an action, the husband must consent to and be joined as a party plaintiff, and furthermore, as whatever damages she might recover would immediately become his property, the law could not tolerate such an indecency as that a man should so profit by his own wrong.

" But the tendency of modern thought is to abrogate the idea of superior and inferior from the relation of husband and wife, and as, under the statutes which have in recent years been passed

in the various States, married women are permitted to sue independently of their husbands and to hold separate property, the reasons for the distinction would seem no longer to be tenable, and it has been held that under such statutes a married woman may maintain an action for criminal conversation."

The leading case in this State wherein the right of a married woman to sue the paramour of her husband for damages was considered is *Bennett* v. *Bennett* (116 N. Y. 584). That action was an action to recover for alienation of affections, but the argument in the very learned opinion of Judge VANN in that case is equally applicable to the situation of a plaintiff wife in an action for criminal conversation. In comparing the relative rights of a husband and wife Judge VANN, in the course of his opinion, states (at p. 590): " * * * As the wrongs of the wife are the same in principle and are caused by acts of the same nature as those of the husband, the remedy should be the same. What reason is there for any distinction? Is there not the same concurrence of loss and injury in the one case as in the other? Why should he have a right of action for the loss of her society unless she also has a right of action for the loss of his society? Does not the principle that ' the law will never suffer an injury and a damage without a remedy ' apply with equal force to either case? Since her society has a value to him capable of admeasurement in damages, why is his society of no legal value to her? Does not she need the protection of the law in this respect at least as much as he does? Will the law give its aid to him and withhold it from her? "

In the course of his opinion Judge VANN further says: " The cause of action for a personal injury to a married woman, whether committed before or after marriage, belonged to her at common law, or else it would not survive to her upon the death of her husband. * * *

" It is clear, therefore, that at common law the right of action for a tort committed upon a married woman belonged to her, and it is in the light of this principle that the full significance of section 450 of the Code becomes apparent. This section recognizes the separate existence of the wife to the broad extent of authorizing her to sue generally in her own name. By enabling her to prosecute as if she were single, it removed the only obstacle in the way of a personal assertion of her right in this regard. She had a right of action for any actionable injury before, but she could not set the law in motion unless her husband joined. When the Legislature provided that she could sue in her own name, without this inconvenient formality, it cut off the right of the husband and permitted her to prosecute and recover for herself."

In conclusion, Judge VANN says: "We think the judgment appealed from should be affirmed upon the ground that the common law gave the plaintiff a right of action, and that the Code gave her an appropriate remedy."

It seems to me the whole situation is summed up in *Bennett* v. *Bennett (supra)*. By a fiction of the common law a husband and wife were deemed to be one; the wife was the husband's property; her earnings belonged to him; he was entitled to her services; she had no right of action for a tort against her, although he could maintain such an action; she was not interested in any damages in any action for such tort; she had no right to bring action, save with the consent of her husband. All of this has been removed by the various acts enabling married women to sue as though single. The Legislature having removed the disability of the married woman to sue in her own name, irrespective of her husband, and to recover upon any cause of action, and to enforce any right of property, no good reason exists why she should not have the same right to sue a person who has seduced her husband and caused her disgrace and mental suffering, as the husband would have to sue the person who had brought like suffering upon him. The result of criminal conversation is a personal injury to the wife as well as to the husband.

Section 57 of the Domestic Relations Law, concerning the "Right of action by or against married woman for torts," provides: "A married woman has a right of action for an injury to her person, property or character or for an injury arising out of the marital relation, as if unmarried."

By section 37-a of the General Construction Law (as added by Laws of 1920, chap. 917; formerly Code Civ. Proc. § 3343, subd. 9), "Personal injury" is defined to include libel, slander, *criminal conversation*, seduction, etc. Thus the Legislature has not only removed every obstacle which formerly existed at common law preventing the wife from seeking redress for personal injury suffered by her, but it has expressly provided that criminal conversation is a personal injury. Reading these statutory provisions together, it seems to me beyond argument that a wife may seek redress for criminal conversation between her husband and another woman.

In the District of Columbia it has been distinctly held that a wife has a right of action at common law for criminal conversation with her husband, and that her conjugal rights are in principle the same as his. (*Dodge* v. *Rush*, 28 App. Cas. [D. C.] 149.) It is stated in the opinion in that case (at p. 153):

"Appellee concedes that the husband is entitled to maintain an action for criminal conversation with his wife, and that it is

only necessary for him to prove in such an action the marriage and adultery as charged. But it is contended that the wife has no right of action at common law for criminal conversation with her husband.

" For the reasons heretofore given for recognizing the wife's right of action for the alienation of the affections of her husband, this contention must be denied.

" While the injurious consequences of a wife's adultery may be more far reaching because of probable difficulties and embarrassments in respect of the legitimacy of children, her conjugal rights are in principle the same, substantially, as his. Whatever the ancient doctrine may have been, modern morals and law recognize the equal obligation and right of husband and wife. Nor can the consent of either to his or her defilement affect the right of action of the injured spouse against the other wrongdoer."

In *Parker* v. *Newman* (200 Ala. 103; 75 So. Rep. 479) the court recognized the right of the wife to bring an action to recover damages for criminal conversation with her husband. In the course of the opinion in that case (at p. 107 and p. 483) it is said: " Most of the American courts have asserted this equality of husband and wife in the right to conjugal affection, society, and aid; and where the right of action is not sustained in her on the theory of the policy of the law to afford a remedy wherever an injury has been suffered, the right is based upon the statutes of removal of disabilities of the married woman."

In *Long* v. *Booe* (106 Ala. 570; 17 So. Rep. 716) the court held that it was unnecessary to show that the plaintiff had suffered any pecuniary damage through the loss of his wife's services, as he was entitled to recover for injuries to his feelings, his comfort, his pride, and his affections, and his conjugal rights.

The Court of Appeals of the State of Kentucky, as recently as 1918, held that in view of the Married Woman's Act in that State, which is practically the same as that in the State of New York, and which empowered the wife to sue for the protection of her rights without the husband's consent, the wife has a right of action for criminal conversation. (*Turner* v. *Heavrin*, 182 Ky. 65; 206 S. W. Rep. 23.) In that case Justice Miller of the Kentucky Court of Appeals wrote a very exhaustive opinion reviewing with great fairness the authorities of the various States, both pro and con, upon the question of the right of the wife to sue for criminal conversation with her husband. The action was very similar to the case at bar, and practically the same course was adopted with reference to the cause of action for alienation of affections and criminal conversation as that in the case here under consideration.

The petition in that case stated two grounds of action against the defendant, *first*, the alienation of the affections of the plaintiff's husband; and, *second*, criminal conversation with him. So much of the petition as sought damages for the alienation of the affections of the petitioner's husband was dismissed and the petitioner relied solely upon so much of her petition as sought a recovery for criminal conversation. The Circuit Court dismissed the petition and the plaintiff appealed. Justice MILLER, in his opinion, in the Kentucky Court of Appeals on the review of the action of the Circuit Court, stated:

" So the only question presented upon this appeal is this: Can a married woman maintain an action against another woman for having had criminal conversation with the married woman's husband? The common law unequivocally answered the question in the negative. * * *

" * * * A fundamental right which flows from the relation of marriage, and one which the wellbeing of society requires should be maintained inviolate, is that of exclusive marital intercourse which each acquires with the other. From this it follows that, whenever either party commits adultery, he or she commits a trespass upon the rights of the other; and from time immemorial the law has given the husband a right of action for damages against a seducer of his wife. But at common law the wife had no such right, though in natural justice there seems to be no good reason why her right to maintain an action against the seducer of her husband should not be as broad as his right of action against her seducer. If one had the right to sue, one would naturally say the other had the same right. But, as above stated, the common law has never seen fit to accord the wife the redress which it accorded to the husband. * * *

" The reason for this distinction against the wife rested not so much upon any principle of abstract right, as in the subservient relation which the wife occupied at the common law. The husband had a property in his wife's services, and it is upon the loss of this that his right of recovery was formerly placed. But the wife, having no property right in the services of her husband, she could not maintain the action. In 3rd Blackstone's Commentaries, 143, the reason for this denial to an inferior is stated as follows:

" ' The inferior hath no kind of property in the company, care, or assistance of the superior, as the superior is held to have in those of the inferior, and therefore the inferior can suffer no loss or injury. The wife cannot recover damages for beating her husband, for she hath no separate interest in anything during her coverture.'

" Moreover, at common law, in order for a wife to bring an

action, her husband must consent to and be joined as a party plaintiff, and whatever damages she might recover would immediately become his property, since the law could not indulge such an indecency as that a man should so profit by his own wrong. * * * The rule is stated by Bouvier as follows:

" ' The wife cannot maintain an action for criminal conversation with her husband; and for this, among other reasons, because her husband, who is a *particeps criminis*, must be joined with her as plaintiff.' Dict. verb. ' Crim. Con.'

" The great weight of authority is to that effect, although in some jurisdictions, in which it was conceived that the denial of the right to the wife rested principally upon the question of parties and procedure, a different view has been taken since the adoption of the modern married women's acts, authorizing married women to sue alone, and to own and control the recovery."

The learned justice then cites authorities in some of the other States denying a wife the right to maintain such action and referring to the case of *Doe* v. *Roe* (82 Maine, 503) quotes from the opinion therein at length and, commenting thereon, says: " The reasoning of this opinion seems to rest upon the insubstantial distinction that because the law gives a right of action in such cases to the husband on account of his possible greater injury, it should not give any redress to the wife, for a similar act because her injury is of less magnitude, and her right to sue might be abused."

Referring to the removal of the disability by the enactment of the Married Woman's Act in Kentucky, Justice MILLER then says: " The Married Woman's Act of 1894 (Acts 1894, c. 76;* Ky. Sts. § 2128) removes one of the common law objections to the wife's right to maintain an action for criminal conversation by empowering her to sue, as a single woman, for the protection of her rights without the consent of her husband; and we are not much impressed with the remaining ground of the argument based upon a supposed public policy. The public policy of a State is expressed in its Constitution and statutes and in its common law as found in the opinions of its court of last resort. (*Gathright* v. *H. M. Byllesby & Co.*, 154 Ky. 106, 157 S. W. 45.) But in none of these ways has this Commonwealth heretofore declared its public policy upon this question; and, this being the first opportunity this court has had of passing upon it, the question is to be decided upon sound principles and authority. If suits of this character upon the wife's part would tend to raise family dissensions and neighborhood scandals, the same result would be obtained in case the husband

---

* See Ky. Acts of 1894, chap. 76, amdg. Ky. Acts of 1891-92-93, chap. 205, § 33.— [REP.

brings such an action; and, as above stated, the fact that the husband's injury by the infidelity of his spouse may be of the greater and more serious character is no answer to the claim upon the part of the wife to maintain a similar action for a less injury. If she is injured at all in such a case (and no one will deny it), she should have the right to maintain her action therefor and the verdict be measured accordingly. But to say that the husband has a right to maintain an action against his wife's paramour and that she should not have a like right of action against his paramour, is to wholly destroy that equality of right which is the boast of our institutions."

In conclusion, Justice MILLER says: "We are, therefore, of opinion that, although the common law rule prevented the wife from bringing an action for criminal conversation, it is no longer applicable under our present statute which places the wife upon an equal footing with the husband as to her right to sue for the purpose of protecting and enforcing her rights of every kind and character."

There is little force, it seems to me, in the suggestion that because in the past the common law did not afford a wife a right to sue for criminal conversation with her husband, and because of the novelty of the action it cannot be maintained. The just right to invoke a remedy for a wrong committed upon her has always existed in the wife, although her peculiar married status denied her the right to pursue such remedy in court. Her disability has been removed by the Legislature and the enactment of statutes making a recovery for injuries suffered by her for the torts of others her own and affording her the right to pursue her remedy in court. There is, to my mind, the very strongest reason why the courts should hold that the ancient common-law prohibition against such an action by a wife has been removed.

Surely no argument against such action can be drawn from its novelty. As was said by VANN, J., in *Bennett* v. *Bennett* (116 N. Y. 584, at the bottom of p. 589):

"It is urged that the novelty of the action is a strong argument that it cannot be upheld. The same point was urged in almost the first action brought by a husband against one who had enticed away his wife, and the answer made by the court in that case we repeat as applicable to this: ' This first general objection is that there is no precedent of any such action as this, and that, therefore, it will not lie. But this general rule is not applicable to the present case. It would be if there had been no special action on the case before. A special action on the case was introduced for this reason, that the law will never suffer an injury and a damage without

a remedy, but there must be new facts in every special action on the case.' (*Winsmore* v. *Greenbank*, Willes, 577, 580.)

" Moreover, the absence of strictly common-law precedents is not surprising, because the wife could not bring an action alone, owing to the disability caused by coverture, and the husband would not be apt to sue, as by that act he would confess that he had done wrong in leaving his wife.

" The actual injury to the wife from the loss of *consortium*, which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives to each the same rights in that regard. Each is entitled to the comfort, companionship and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation not only of a natural right, but also of a legal right arising out of the marriage relation. It is a wrongful interference with that which the law both confers and protects. A remedy, not provided by statute but springing from the flexibility of the common law and its adaptability to the changing nature of human affairs, has long existed for the redress of the wrongs of the husband."

In *Colwell* v. *Tinker* (169 N. Y. 531, 536) it is said concerning the gist and basis of an action for criminal conversation: " While loss of service is usually pleaded in this form of action, yet its real foundation is the personal injury inflicted upon the husband. The offense charged is a most grievous wrong against social order and society; it strikes at the foundations of the home and the legitimacy of offspring. The husband, who is entitled to live with his wife and enjoy her society in the marriage relation, finds himself humiliated and, to a certain extent, disgraced by a public scandal; the marriage bed is dishonored; his domestic peace and comfort are destroyed and he is subjected to great mental suffering."

Can it be said that the criminal conversation for which the plaintiff has recovered, causing her humiliation, disgrace and mental suffering, did not as effectually strike at the foundations of the home as would a like criminal conversation on her part? Is not the wife entitled to live with her husband and enjoy his society in the marriage relation as well as the husband? Does she not find herself humiliated and disgraced by public scandal as the result of the wrong committed against her? Is the marriage bed dishonored less in the one case than in the other? Is not her

domestic peace and comfort destroyed, and is not she subjected to great mental suffering? I am unable to distinguish between the wrongs to the husband in the one case and to the wife in the other. The question of the legitimacy of children is but one element in an action for criminal conversation. As an element of damage, the mental suffering, humiliation and disgrace which come to a virtuous woman from the knowledge that another has encompassed her husband's wrongdoing is of little less importance. If the action for criminal conversation depended alone upon the question of legitimacy of children, then if there were no children and no prospect of children, the action for criminal conversation would not lie. It seems to me absurd to say that the action for criminal conversation is to be dependent upon the fact as to whether or not there may be offspring or the prospect of offspring of the marriage.

The appellant also urges that the recovery of the plaintiff, even as reduced by the trial court, is excessive, and that the same should be further reduced. Under all of the circumstances, the trial court, having heard the witnesses, was best able to pass upon the question of amount of the recovery, and I do not think we should interfere with his discretion in that respect.

The judgment and order appealed from should be affirmed, with costs.

Judgment and order reversed, with costs, and complaint dismissed upon the merits, with costs.